# Western Railway of Alabama v. Williamson.

*Action against a Railroad Company by an Employé to recover Damages for Personal Injuries.*

1. *Appeal; when ruling upon evidence not considered because not intelligently presented.*—Where on appeal an assignment of error is based upon the trial court refusing to allow a certain question to be asked a designated witness, and the fact that such witness was examined does not appear in the bill of exceptions, but only in the assignment of error, and it is not shown at what time or in what connection he was examined nor who he was, what was his business, what was the purpose of the question, or whether he was competent to testify, there is not sufficient shown to permit the appellate court to pass intelligently on the ruling of the trial court, and the assignment of error will not be considered.

2. *Action for negligence; burden of proof.*—In an action to recover damages for personal injuries, alleged to have been inflicted by

[Western Railway of Alabama v. Williamson.]

reason of the negligence of the defendant or its employés, where the cause is tried on issue joined on the pleas of the general issue and contributory negligence on the part of the plaintiff, the burden is upon plaintiff to make out a *prima facie* case by proving that the defendant was guilty of negligence, which caused the injury; whereupon the burden shifts to defendant to overcome such proof, or to show that the plaintiff's negligence proximately contributed to the injury.

3. *Same; contributory negligence; charge to the jury.*—In an action against a railroad company by an employé to recover damages for personal injuries alleged to have been caused by the negligence of the defendant or its employés, the plaintiff, who was a brakeman and who was injured while attempting to make a coupling in the discharge of his duties, is guilty of negligence, precluding his recovery, if it be shown that after giving the signal to the engineer to stop, which was given to enable him to fix the drawhead of the car to be coupled, he went right in between the cars in front of the moving cars, contrary to the rules of the company, and without awaiting to see if his signal was obeyed, and was injured while attempting to adjust the drawhead; and charges to the jury which assert to the contrary are erroneous.

4. *Pleading and practice when refusal to give general affirmative charges will not be reviewed on appeal.*—When the bill of exceptions does not purport to set out all the evidence, the refusal of the trial court to give the general affirmative charge at the request of one of the parties to the suit will not be reviewed on appeal, and it can not be affirmed that the trial court erred in such refusal.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN G. WINTER, Special Judge.

This action was brought by the appellee, L. B. Williamson, against the appellant, to recover damages for personal injuries sustained by plaintiff while in the discharge of his duties as a brakeman on defendant's road.

The first count of the complaint was as follows: "The plaintiff claims of the defendant the sum of twenty thousand dollars as damages for that, whereas, heretofore, towit, on the 20th day of November, 1894, the defendant was a corporation engaged in the operation of a railway from the city of Selma through the city of Montgomery in the State of Alabama, to West Point, on a line between the States of Georgia and Alabama, and in the operation of said railway ran trains for the carriage of freight and passengers between said points. That the plaintiff was at that time a brakeman in the

employ of the said defendant, and was acting as such for said defendant on a train for the carriage of freight, running between the cities of Montgomery and Opelika, in the State of Alabama, and that while the said plaintiff was so engaged on said train, it became necessary to attach to said train certain cars upon an elevated track at Sistrunk & Jordan's lumber yard near Goodwyn's Station, Alabama, on the line of said railway between the city of Montgomery and the city of Opelika. That it was the duty of said plaintiff prior to connecting said cars with said train, to examine the same so as to know the kind and condition of the drawheads, drawbars and coupling apparatus; and this plaintiff undertook the discharge of said duty and made the same examination; and while he was in the discharge of his said duty making said examination, the engineer in charge of the locomotive attached to said trains negligently caused the same to be pushed and shoved against the car that the said plaintiff was in the act of examining, with such rapidity and violence as to catch the said plaintiff between the said car and the said train and to so mash and bruise his right hand and arm as to require his right hand to be amputated, thereby permanently disabling the said plaintiff, and rendering him unable to labor for a long time, for, towit, five months, and for all time greatly impairing his capacity to earn a livelihood, besides putting him to great expense in procuring the proper medical attendance and causing him to suffer great mental and physical pain, all of which was to his damage as aforesaid, wherefore, this suit."

The second count of the complaint, after stating the facts as to the allegation of the injury, &c., as prefatory allegations, then continues: "That it was the duty of said plaintiff prior to connecting said cars with said train to examine the same so as to know the kind and condition of the drawheads, drawbars and coupling apparatus; and this plaintiff undertook the discharge of his duty and made the said examination. And plaintiff avers that a conductor was in charge of said train, and it was his duty, while he, the said plaintiff, was making the said examination, to be at a point near the said train and the cars that were to be coupled thereto, and where he could see both the plaintiff and the engineer in charge of the locomotive attached to the

said train, and could direct the movements of said loco-
motive so as to prevent the said train from running upon
or against the said plaintiff while he was discharging his
duty ; but that the said conductor unmindful of his duty
as aforesaid, negligently went to some other point, and
negligently failed to take his position where he could
direct the movements of said train and prevent the same
from running upon or against the said plaintiff while he
was in the discharge of his duty as aforesaid, and by
reason of such negligence of said conductor, and while
said plaintiff was making such examination said train
was rapidly and violently pushed and shoved against
the car that the plaintiff was in the act of examining
and caught the said plaintiff between said car and the
said train, and so mashed and bruised his right hand
and arm as to require his right hand to be amputated,
thereby permanently disabling the said plaintiff, and
rendering him unable to labor for a long time, for, to wit,
five months, and for all time greatly impairing his
capacity to earn a livelihood, besides putting him to
great expense in procuring the proper medical attend-
ance, and causing him to suffer great mental and
physical pain, all of which was to his damage as afore-
said, wherefore, this suit.''

After the prefatory allegations, the third count of the
complaint continued as follows :    ''That it was the duty
of said plaintiff, prior to connecting said cars with said
train, to examine the same so as know the kind and
condition of the drawheads, drawbars and coupling ap-
paratus ; and this plaintiff undertook the discharge of
his said duty and made the said examination, and plain-
tiff avers that the said track upon which the said car,
being examined by him as aforesaid, was located, was
elevated above the ground, being built upon a trestle,
that in order to make the coupling with the same, the
train had to be run up a steep incline, that to make
said run at any other than a rapid and violent rate of
speed, dangerous to the life and limb of those engaged
in and about the examination of said drawheads, draw-
bars and coupling apparatus, and in and about the
coupling of such cars, it was necessary that not less
than, to-wit, six cars should be placed behind the loco-
motive attached to the train to which such coupling was
to be made, so that while the rear end of said train

would reach the car to be coupled thereto, the said locomotive would be at the foot of said incline and on a level track. And plaintiff avers that the conductor in charge of said train had been notified, prior to the 20th day of November, 1894; that it was dangerous to undertake to couple a car upon said track with a train with less than, to-wit, six cars behind the locomotive, and this plaintiff knew that such notice had been given to said defendant, but notwithstanding it had received such notice, the said conductor negligently required the engineer in charge of the aforesaid local freight train locomotive, to make said coupling with only, to-wit, two cars behind said locomotive, and by reason of said negligent requirement, the engineer in charge of said locomotive was forced to push and shove the said train up the said incline and against the car that the said plaintiff was in the act of examining, with such rapidity and violence as to catch the said plaintiff between the said car and the said train and so mashed and bruised his right hand and arm as to require his right hand to be amputated, thereby permanently disabling," &c.

In the fourth count, the averments in reference to the negligence complained of was as follows : "And plaintiff avers that it became and was his duty as such brakeman to couple the said cars standing upon said elevated track with the said train, and that in order to make such coupling, it was necessary for him to get in between the said cars and the said train, and while in a position at said cars in which it was necessary for him to be in order to make said coupling, the engineer in charge of the locomotive attached to the said train negligently caused the same to be pushed and shoved against the car where plaintiff was standing in the discharge of his said duty with such rapidity and violence as to catch the said plaintiff between the said cars and the said train, and to mash and bruise his right hand and arm as to require his right hand to be amputated, thereby permanently disabling the said plaintiff," &c.

In the fifth count of the complaint, the averments as to the extent of the negligence complained of were as follows : "The plaintiff was at the time a brakeman in the employ of the said defendant and was acting as such for said defendant on a train for the carriage of freight running between the cities of Montgomery and Opelika

in the State of Alabama, and that while plaintiff was so engaged on said train, it became necessary to attach to said train certain cars upon an elevated track at Sistrunk & Jordan's lumber yard near Goodwyn's Station, Alabama, on the line of said railway between the city of Montgomery and the city of Opelika. And plaintiff avers that it was his duty as such brakeman to couple the said cars standing upon said elevated track with the said train. That as said train was backing up the said incline, plaintiff walked forward to said cars standing upon said elevated track, and just before reaching said cars, and when about twelve feet therefrom he noticed that the coupler upon said car standing upon said elevated track, which was to be coupled to said train was closed and was not in a position for making the coupling; that he thereupon gave a signal for the engineer to stop the said train; that the said signal was given in time for said engineer to have stopped said train in order that he might put the said coupler in a condition to enable the coupling to be made; and it was necessary that he should go upon said track to fix the same with his hands, and for this purpose, he walked in between said cars to put said coupler in position, and while in the act of attempting to fix it so that the coupling could be made and without fault on his part, said train ran against him and caught his hand in between the said couplers on said cars; and plaintiff avers that said engineer received the signal in ample time to have stopped the said train before it reached the car that plaintiff was standing by for the purpose of fixing the coupling, and that it was his duty to immediately, upon the receipt of said signal, stop the said train, and said engineer, unmindful of his duty in this respect, and regardless of the danger to plaintiff, negligently ran said train against said car standing upon said elevated track, and caught the right hand and arm of plaintiff in between the couplers of said cars, and so mashed and bruised his right hand as to cause the same to be amputated, thereby permanently disabling the said plaintiff," &c.

To each count of the complaint, the defendant interposed demurrers as follows: To the first three counts: Because, 1st. They each fail to show or aver that it was the duty of plaintiff to go in between the cars to examine the drawheads. 2d. That said examination

could not have been made without exposing himself. 3d. They show that plaintiff was guilty of contributory negligence in placing himself on track in front of moving train.

To second count : Because it fails to show that plaintiff did not know of the alleged negligence on part of the conductor when plaintiff went between the cars, and because it shows plaintiff guilty of contributory negligence in attempting to make the coupling when the conductor was not in a proper position to direct the movement of the train.

To the third count : Because it fails to show who gave the notice, or what officer or agent of defendant received the alleged notice, that it was dangerous to couple a car on said track with less than six cars behind the locomotive ; and because it shows that the plaintiff was guilty of contributory negligence in attempting to couple a car under circumstances and in a manner which he knew was dangerous to the life and limbs of those engaged in it.

To the fourth count : All the above grounds of demurrer were interposed, and in addition thereto the following : Because it fails to show with sufficient certainty that said injury was caused by the negligence of the defendant, or that it was necessary for plaintiff to go in between the cars at the time he did.

To the fifth count : Because it shows plaintiff guilty of contributory negligence and that he assumed the risk of injury in going on the track in front of a moving train and in attempting to put said coupler in proper position while a train of cars was backing towards him.

The court overruled each of these demurrers, and the trial was had upon issue joined upon the pleas of the general issue and contributory negligence. The facts of the case are sufficiently stated in the opinion.

The defendant separately excepted to each of the following portions of the court's general charge to the jury, which are numbered to correspond with the assignments of error :

(9.) "The burden of proof rests upon the plaintiff in this action to prove that these injuries received, were on account of the negligence of the defendant. He starts out with that burden of proof. If he makes a *prima facie* case before you, then the burden of proof is

shifted and it rests upon the defendant to make good his special plea of contributory negligence."

(10.) "Now, gentlemen of the jury, I think and charge you, that this case has been brought down to one single proposition, and that is, whether or not the plaintiff in this action, when he, as he claims, went between those cars for the purpose of fixing the drawhead, whether or not he gave the signal to stop the train under such circumstances as would reasonably impress him with the idea, that the signal would be observed by defendant. Now, if he did that, and the signals were not observed by defendant under such circumstances as that they ought to have been observed by defendant, then, gentlemen of the jury, the defendant would have been guilty of negligence, and the plaintiff would not have been guilty of contributory negligence."

(11.) "You recollect the evidence upon the fact that plaintiff in this case was one of the brakeman of the defendant on that road, that according to his evidence he went there for the purpose of fixing this draw-head, he claiming that the draw-head was out of order ; that when he went between the rails, observing the draw-heads to be out of order, (I simply stating his part of the evidence), that he gave the signal to stop—not the signal to slow up—and he claims that he gave it under such circumstances and in such manner as that the defendant in this action ought to have observed it. If he did that— if he gave the signal so that the engineer, in the discharge of his duties, ought to have observed that signal, or the conductor, in the discharge of his duties, ought to have communicated it to the engineer in time for the train to come to a stop before the collision occurred, and the signal was not obeyed—then, I charge you, gentlemen of the jury, under those circumstances, he had a right to go between those cars."

Among the charges requested by the defendant, and to the refusal of the court to give each of which the defendant separately excepted, were the following : (1.) "If the jury believe all the evidence, they must find for the defendant." (2.) "If the jury believe, from the evidence, that the plaintiff negligently or carelessly failed to make a proper examination of the draw-heads and coupling apparatus when the engine was not in motion,

and that such failure proximately contributed to the injury complained of, they must find for the defendant."

There were verdict and judgment for the plaintiff, assessing his damages at $1,500. The defendant appeals, and assigns as error the many rulings of the trial court to which exceptions were reserved.

GEORGE P. HARRISON, for appellant.—1. The demurrer to the complaint should have been sustained, inasmuch as each of the counts show contributory negligence on the part of the plaintiff. While contributory negligence is a defense which should be generally pleaded, yet, when construing the complaint most strongly against the pleader, it shows contributory negligence, a demurrer should be sustained to it. *Non constat*, when the complaint affirmatively shows, as in the third count, that plaintiff was guilty of contributory negligence, this should be done.—*S. & M. R. R. Co. v. Shearer*, 58 Ala. 672.

2. The other rulings of the court are shown to have been erroneous, by the following authorities: *M. & C. R. R. Co. v. Graham*, 94 Ala. 545; *E. T., V. & G. R. R. Co. v. King*, 81 Ala. 177; *Collins v. Stephens*, 58 Ala. 545; *L. & N. R. R. Co., v. Markee*, 103 Ala. 160; *R. & D. R. R. Co. v. Thomason*, 99 Ala. 471; *M. & B. R. R. Co. v. Holborn*, 84 Ala. 133; *Western R. of Ala. v. Davis*, 107 Ala. 626; Woods Masters & Servant, §§ 326, 402, 414.

TOMPKINS & TROY, *contra.*—The court properly overruled the demurrers of the defendant to the complaint. There was stated therein a substantial cause of action. *C. & W. R. R. Co. v. Bradford*, 86 Ala. 574; *L. & N. R. R. Co. v. Hawkins*, 92 Ala. 241. So far as the allegations of the count are concerned, the engineer stopped the train when plaintiff gave him the signal to do so, and then plaintiff went upon the track; and then, after plaintiff went upon the track, the engineer negligently ran the train against him. One phase of the evidence tends to show that this was exactly how he was injured. Contributory negligence is defensive matter which defendant must set up and prove.—*M. & O. R. R. Co. v. George*, 94 Ala. 215. It is not shown by the averments of either of the counts of the complaint that the plaintiff was guilty of contributory negligence.

The exceptions to the rulings of the court upon the evidence are not sufficiently shown to authorize their review on appeal.—*Williams v. Woodward Iron Co.*, 106 Ala. 254; *Gordon v. McLeod*, 20 Ala. 242; *Smith v. King*, 22 Ala. 558; *Jacques v. Horton*, 76 Ala. 238; *McAbee v. Parker*, 78 Ala. 573; *Hood v. Pioneer, &c. Co.*, 95 Ala. 461. Furthermore, exceptions to rulings upon evidence, it is expressly held, must be reserved by bill of exceptions. 2 Encyc. of Pl. & Pr. 390, note 1.

The first charge requested by the defendant, which was the general affirmative charge in its behalf, was had on appeal, because the bill of exceptions does not purport to set out all the evidence.—*Hudson v. Bauer Grocery Co.*, 105 Ala. 201; *L. & N. R. R. Co. v. Davis*, 103 Ala. 661; *Wardsworth v. Williams*, 101 Ala. 264.

The cause was submitted to the jury on the 5th count alone. That count was framed under the fifth sub-division of section 2590 of the Code, and alleged that plaintiff's injury was caused by reason of the negligence of the engineer of defendant, who had charge of its engine. There is no doubt that the plaintiff, as brakeman, and the engineer were fellow-servants in the employ of their common master, the defendant.—*M. & M. R. R. Co. v. Smith*, 59 Ala. 245. Under such circumstances at common law, defendant would not have been liable for the negligence of such engineer. But section 2590 removes this restriction and makes the defendant liable for the negligence of a fellow-servant of the plaintiff.—*M. & B. R. Co. v. Holborn*, 84 Ala. 133; *Wilson v. L. & N. R. R. Co.*, 85 Ala. 272; *C. & W. R. R. Co. v. Bradford*, 86 Ala. 579. By this rule, defendant is as clearly liable for an injury caused to plaintiff by the negligence of its engineer as if such injury had been caused by its own negligence, unless plaintiff was himself negligent in such a way as contributed to bring about such injury.—*M. & O. R. R. Co. v. George*, 94 Ala. 220.

HARALSON, J.—The bill of exceptions, as shown by the abstract, does not purport to set out all the evidence. It is contended by appellee, that the abstract also fails to show that exceptions were reserved to any of the rulings of the court assigned as error. But, after setting out in the abstract each ruling, and the objections that had been interposed, and setting these out only in

[Western Railway of Alabama v. Williamson.]

the assignments of error,the abstract concludes: "Proper exceptions were reserved to each and all the foregoing assignments of error." This method of stating exceptions to be here passed on, is subject to criticism. It is far better to set out in the abstract the rulings with objections that had been interposed, and the exceptions reserved thereto, just as they appear in the bill of exceptions. It will be less confusing and save the consideration, often, of unnecessary and perplexing questions, to do so. We apprehend that what purports to be a reservation of exceptions to rulings in this case, ought, under the conditions before us, to be held sufficient. We have heretofore so ruled from the bench.

1. The first assignment of error as to the rulings of the court on demurrers to the complaint cannot be sustained. Each count seems to present a good cause of action.

2. The second assignment is, "In sustaining plaintiff's objection to question asked witness, Shafer, by defendant, as follows : 'How are automatic couplers regarded by railroad men as to their fitness for the purposes intended, and their safety for the employés?'" That such a witness as Shafer, was examined by defendant, appears alone from the assignment of error as above copied, and from nothing in the abstract of the evidence. At what time and in what connection he was examined, who he was and in what business engaged, and the purpose of the question propounded, do not satisfactorily appear. We are, therefore, without information sufficient to pass intelligently on the ruling of the court in sustaining an objection to the question.

3. The same thing may be said of the second and third questions propounded to said witness, rulings on which constitute assignments of errors 3 and 4.

It is unnecessary to review the 5th, 6th, 7th and 8th assignments, further than to say, that there is such confusion in the statement of the rulings, about the witnesses and in what connection they were examined, there being nothing concerning them in the bill of exceptions, as shown by the abstract, we are unable to give the exceptions intelligent consideration.

4. Before passing on the other assignments of error, having reference to charges of the court, such as we deem it important to notice, it is proper to refer to the

evidence in the cause, as briefly as may be. It shows that plaintiff was engaged as a brakeman on defendant's railroad, and had been thus engaged about two years, and prior to that time, he had had five or six years' experience in handling trains on other railroads. The injury for which he sues, occurred at Sistrunk & Jordant's saw-mill, situated about one-fourth of a mile from defendant's main line, and connected therewith by a branch track. From this mill, defendant was accustomed to haul lumber, stored in sheds on each side of and covering the track, at a point where the track was elevated, some six or twelve feet above the ground, according to varying estimates, and was there level; that to reach this elevated track, it was necessary to ascend an incline, in length, from the end of the switch to the top, from 60 to 120 feet, as estimated by different witnesses; that there were two or three loaded cars standing on this elevated track under the shed, to be coupled and brought down to the train below; that for this purpose the switch was turned,—as the plaintiff testified, by him, and as testified by another brakeman, by himself,—to let in the engine with one or two cars attached, to back up for those standing on the elevation. The plaintiff's testimony was, that after the switch was turned, he signalled the engineer to back up, and obeying the signal, the engineer did so, following the plaintiff, who walked ahead of the engine and cars; that the distance from the end of the car on the elevated track, to the top of the incline was about two car lengths, and that it was about forty feet from the bottom to the top of the incline; that after plaintiff reached the top of the incline, and while under the shed, he could not see the engineer nor could the engineer see him; that it was customary for the conductor to stand so as to see the brakeman doing the work and the engineer; that after reaching the top of the incline, and when the cars were being backed, he was standing near the incline, some 10 or 12 feet from the car to be coupled, and tried to give the stop-signal to the engineer, whom he did not see, but who plaintiff supposed ought to see him; that he did not see the conductor, and did not know where he was until after the injury; that it was the conductor's duty to look out for the men doing the work at that place, especially, because they cannot see the engineer nor the engineer see them;

that after giving this signal, plaintiff went in between the rails to examine the coupler, without waiting to see if the signal had been observed; that the engine and cars backed rapidly and struck the ones to be coupled with such force as to cause them to roll back some 10 or 12 feet; that the coupler of each car was out of order, the one attached to the engine was half open and would not work; that the plaintiff had attempted to open it but it would not open, and that the defect in the one on the elevation to be coupled was, that the lugs to hold the knuckles together were not proper ones.

The evidence also tended to show, that the couplers on each car were automatic, which, if in order, would couple themselves when brought together with sufficient force, without the use of any one's hand.

The evidence for defendant tended to show, that the couplers were in good order; that the conductor was in proper place,—about the edge of the incline,—to receive from the plaintiff his signals and to transmit them to the engineer; that he immediately transmitted all signals given by plaintiff, and they were promptly obeyed; that the rate of speed at which the engine and cars ascended the incline, was the usual and customary speed at that place, and not as fast as a man could walk. The engineer testified, that when he got the signal to stop, he heard some one halloo, looked out and saw plaintiff come out with his hand injured; that the signals of the conductor, before the one to stop, were to move up gradually, slowly; that plaintiff gave the signal to stop when the moving cars got right near to him, the cars to be coupled being, in the opinion of the conductor, 5 or 6 feet apart when plaintiff gave the signal, which was immediately repeated to and promptly obeyed by the engineer, and plaintiff went in between the cars, about the time he gave the signal.

The rules of the company were introduced in evidence, requiring all employès, "not only to attend to and obey all signals and instructions, but also that they should, upon all occasions, be vigilant and cautious themselves, not trusting alone to signals or rules of safety;" that "all persons entering or remaining in the service of the company, are warned that in accepting or retaining employment they must assume the ordinary risks attending it. Each employè is expected and required to look

after and be responsible for his own safety, as well as to exercise the utmost caution to avoid injury to his fellows, especially in the switching of cars, and in the movement of trains;" that "stepping in front of approaching engines, * * * getting in between cars while in motion to uncouple them, and all similar imprudences are dangerous and in violation of duty;" that "employés of every grade are warned to see for themselves, before using them, that the machinery and tools which they are expected to use are in proper condition for the service required, and to put them in proper condition, or to see that they are so put, before using them. The company does not wish or expect its employés to incur any risks whatever from which, by exercise of their own judgment and by personal care, they can protect themselves, but enjoins them to take time in all cases to do their duty in safety, whether they may, at the time, be acting under orders of their superiors, or otherwise;" that "coupling cars by hand is strictly prohibited. Any violation of this rule will be severely dealt with," &c.; that "great care must be exercised by all persons when coupling cars. The coupling apparatus of cars and engines is not always uniform in size, style and strength, and is liable to be broken; it is, therefore, dangerous to expose the hands, arms, or persons of those engaged in coupling cars. All employés are hereby instructed, each for himself, to examine so as to know the kind and condition of the drawheads, drawbars, and coupling apparatus, and are prohibited from placing in a train, a car with a defective coupling until they have first reported its defective condition to the yardmaster, conductor or proper person in authority. Sufficient time is allowed, and must be taken by employés in all cases to make examinations." The book containing these rules, the evidence tended to show, had been delivered to plaintiff, and he was acquainted with said rules.

4. There was no error in that part of the general charge excepted to, made the basis of assignment of error 9. The case was tried on the plea of general issue, and of contributory negligence on the part of the plaintiff. The burden is always with plaintiff under the general issue, to make out a *prima facie* case of negligence against the defendant, by proving that the company was

[Western Railway of Alabama v. Williamson.]

guilty of some negligence, the proximate effect of which was injury to him. When this is shown, the burden is on the defendant to overcome it, and when the defense of contributory negligence is relied on, as well, the *onus* is on the defendant to establish it.—*B. U. R. Co. v. Hale*, 90 Ala. 8; *Bromley v. Bir. Min. Railroad Co.*, 95 Ala. 403; *K. C., M. & B. Railroad Co. v. Crocker*, 95 Ala. 428; *McDonald v. Montgomery St. Railway*, 110 Ala. 161.

5. Those parts of the general charge of the court excepted to, the bases of assignments of error 10 and 11, should not have been given. They are not clear, but obscure, and tend to confuse and mislead. It cannot be clearly determined whether the word, "observed," as therein employed, means "seen" or "obeyed." But, whether construed to mean the one or the other, the plaintiff's own evidence tends to show, that without waiting to see if the signal he said he gave the engineer to stop was obeyed or not, he went right in between the cars, in front of the moving engine and cars behind him, and attempted to adjust the coupler, and was injured. The charges lay down too low a degree of caution to be observed by a brakeman in going in between moving cars, to make a coupling, especially in view of the rules of the company in evidence.

6. Charge No. 1 requested by defendant was properly refused. When the bill of exceptions does not purport to set out all the evidence, we can not affirm that the lower court erred in refusing to give the general charge. *Hudson v. Bauer Grocery Co.*, 105 Ala. 201; *Wadsworth v. Williams*, 101 Ala. 265.

There was no error in refusing charge No. 2. It is abstract. There is no evidence that plaintiff failed to make examination of the drawheads and coupling apparatus when the engine was at a standstill, and the cause of injury hypothesized is too remote.

There are 17 other charges asked by defendant and refused. The appellant's counsel has not deemed it important to discuss them. We decline to do so, without intimation as to whether we deem them erroneous or not.

For the errors indicated, the judgment below is reversed and the cause remanded.

Reversed and remanded.