## Andrew C. Paulsen, Plaintiff in Error, v. McAvoy Brewing Company, Defendant in Error.

## Gen. No. 27,072.

1. HIGHWAYS AND STREETS—*instruction eliminating element of prior negligence of driver in approaching crossing as error.* In an action by a pedestrian for damages for injuries sustained in a collision with defendant's team at a street crossing, an instruction is erroneous which limits the driver's duty to exercise care as to the pedestrian to the time after he had, or by the exercise of ordinary care could have had, notice of the pedestrian's situation of peril long enough before the injury was inflicted to be conscious of the imminence of collision and to avoid it, where such instruction may be construed as relieving the driver from liability if the accident occurred as the result of negligence before he reached the crossing which made it impossible for him to avoid the collision when he saw the plaintiff's dangerous position.

2. HIGHWAYS AND STREETS—*duty of driver of vehicle to approach intersecting crosswalk cautiously.* In an action by a pedestrian for injuries sustained in a collision with defendant's team on a crosswalk at a street intersection, an instruction is erroneous which in legal effect declares that if a pedestrian suddenly placed himself in a position of danger, the driver is relieved of liability unless he saw the pedestrian in time to be conscious of his duty to exercise care to avoid collision and to perform such duty, but which does not charge him with the duty of approaching such crossing cautiously, having reference to the possibility of pedestrians lawfully using such crosswalk, where the evidence shows that, by reason of obstructions in the street and the conditions of traffic, a pedestrian might be crossing and in the exercise of care and not be seasonably seen by defendant's driver.

3. NEGLIGENCE—*as element of injury from "mere accident."* An instruction relieving defendant from liability for injuries to a pedestrian in a collision with defendant's team on a crosswalk at a street intersection if the injury was caused by "mere accident" is erroneous, where it is not so qualified as to exclude the attribute of negligence by defendant's servant in driving the team in question.

4. APPEAL AND ERROR—*name and term of office of judge signing bill of exceptions as matter of judicial notice.* A bill of exceptions will be sustained although signed by another judge than the one before whom the trial was had, where it appears that after the

trial and before the signing of the bill an election was held for the election of judges, as the court judicially knows that the term of office of the judge who presided at the trial expired in the interim and that he who signed the bill was elected and became a judge of such court prior to the date of signing.

5. APPEAL AND ERROR—*when bill of exceptions may be signed nunc pro tunc.* A motion to strike from the record a bill of exceptions on the ground that it was not filed within the time limited after judgment will be denied where it appears that such bill was presented, within the time limited, to the successor in office of the trial judge, and that such successor then stamped his signature on it and subsequently signed it *nunc pro tunc* as of the date of presentation.

Error to the Circuit Court of Cook county; the Hon. CHARLES A. WILLIAMS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed and remanded. Opinion filed November 29, 1922.

WILKERSON, CASSELS, POTTER & GILBERT, for plaintiff in error; RALPH F. POTTER and JOHN W. FISHER, of counsel.

WINSTON, STRAWN & SHAW, for defendant in error; CHARLES J. McFADDEN and CLAY JUDSON, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The plaintiff, Andrew C. Paulsen, brought suit against the defendant, McAvoy Brewing Company, to recover damages for personal injuries sustained by the plaintiff on August 27, 1916, when he was struck by a team and wagon belonging to the defendant, at the intersection of Randolph street and Wabash avenue in the City of Chicago. A trial was had and a verdict rendered in favor of the plaintiff in the sum of $5,000. From a judgment entered upon that verdict the defendant prosecuted an appeal to this court. This court reversed that judgment and remanded the cause for a new trial. *Paulsen v. McAvoy Brewing Co.,* 220 Ill. App. 273.

Subsequently, there was a second trial which resulted in a verdict finding the defendant not guilty. This writ of error is prosecuted to reverse a judgment entered upon that verdict. The declaration consisting of one count was filed on September 5, 1918. It charged that the defendant through its agents and servants so carelessly and negligently operated and drove a certain wagon and team in a northerly direction on Wabash avenue that while the plaintiff was lawfully and properly walking across Wabash avenue at its intersection with Randolph street in the exercise of all due care and diligence for his own safety, it collided with the plaintiff knocking him down and injuring him. The defendant filed a plea of the general issue.

Wabash avenue in the City of Chicago runs north and south and intersects Randolph street at right angles; Randolph street from curb to curb is 50 feet wide and Wabash avenue is 47 feet wide. There are two sets of street car tracks in Wabash avenue, one known as the northbound and the other as the southbound. From the outside rail of the track to the nearest curb is 17 feet 9 inches; the distance between the rails of each track is 5 feet 2 inches, and between the inner rails of the two tracks, 5 feet. Wabash avenue at the intersection in question is traversed north and south by an elevated railway, supported by pillars or posts, one of which at the northeast corner of the intersection in question is imbedded in concrete, and is 3 feet east of the east rail of the car tracks and approximately even with the curb line on the north side of Randolph street. The post in question is about 20 inches wide east and west and 2 feet wide north and south.

The plaintiff, at the time of the collision in question, was a man about fifty-six years of age, and a tile setter by trade. About seven o'clock a. m., August 27, 1917, the plaintiff got off a street car at State and Randolph streets and walked east on the north side of Randolph

street intending to go to the Randolph street station of the Illinois Central Railroad, which is several blocks east of Wabash avenue. He walked east on the north side of Randolph street and undertook to cross Wabash avenue. The evidence of the plaintiff himself is to the effect that, when he started across, he looked out to see if there was anything coming; that he looked north to see if there was any car coming south and that there was not; that when he got over between the car tracks or near there, he looked south to see if there was anything coming north; that he saw a wagon drawn by horses coming from the south and going north; that, when he saw it, it was between 20 and 40 feet south of where he was crossing; that he was walking about the middle of the sidewalk on Randolph street and kept on straight east across the street intersection. When asked just what happened then, the plaintiff testified as follows: "Well, then, I saw that wagon coming there, and I kept on going, and I didn't notice anything only when I came—I heard a lady there hollering, and I looked up right in front of me, and just when I looked up, I was struck. I didn't know just what I was struck with, whether—I knew it was a team, but I didn't see whether it was horses or mules at the time. I know I was grabbing at something. I don't know whether I got hold of it or not. That is the last I knew of it until I was picked up."

On cross-examination he stated that just before he reached the northbound track he looked to the south; that he saw a team of horses pulling a garbage wagon in the northbound track, about 40 feet south of where he was; that he did not see anything else; that he passed to the east of the steel post of the elevated structure before he was struck; that he does not remember just where he was looking as he crossed the northbound car track and passed to the east of the steel post.

The evidence of the witness Pauly, who was called

by the defendant, and who was the driver of the beer wagon which was drawn by a pair of mules, is to the effect that on the morning in question he was driving north between the northbound car track and the sidewalk on Wabash avenue; that as he crossed Randolph in Wabash, he noticed a man step out from behind a pillar of the elevated structure; that the man was walking in a northeasterly direction; that he drew in his lines and held the team back and whistled and shouted and tried to attract his attention; that the team struck the man and the latter seemed to grapple with his hands; that the mules became excited and started to prance; that the man in some way fell and was thus injured; that when the plaintiff was struck he was on the north side of the crosswalk about even with the building line; that a garbage wagon which was going along parallel with his wagon but a little in advance, together with the pillar, interfered with his seeing Paulsen as the latter crossed the street car tracks ahead of the garbage wagon.

It is unnecessary to recite at large the substance of the testimony of the various eyewitnesses that were called, inasmuch as the substance of that testimony is somewhat elaborately set forth in the former opinion of this court. *Paulsen v. McAvoy Brewing Co.*, 220 Ill. App. 273. The same occurrence witnesses were called in each case with the exception of one Mrs. Magnuson, whose testimony was introduced in the instant case, but, which adds little, if any, weight to that of the others. The injury to the plaintiff consists of a compound fracture of the left leg, about three inches above the ankle and has resulted in considerable impairment of its use.

The sole contention of the plaintiff is that the trial court erred in giving the jury the defendant's instructions numbered 7, 9 and 16.

Instruction No. 7 is as follows:

"You are instructed that before plaintiff can re-

cover in this case he must prove by a preponderance or greater weight of the evidence that the driver of defendant's wagon had notice, or, by the exercise of ordinary care could have had notice of the dangerous position that plaintiff was in, long enough before the injury was inflicted to enable said driver to form an intelligent opinion as to how the collision might be avoided and apply the means of avoiding such collision. If you find from the evidence in this case that the driver of defendant's wagon did not have such notice, or by the exercise of ordinary care could not have had notice long enough before the collision to form an intelligent opinion as to how the collision might be avoided and apply the means of avoiding such collision, then you are instructed that the plaintiff cannot recover."

It is claimed on behalf of the plaintiff that it was error to give instruction number 7 on the ground that it omits "the element of prior negligence of the defendant and its effect in bringing about the dangerous situation in which the plaintiff was placed." Of course, it is necessary to bear in mind just what the facts were which the evidence tended to prove and which were in the minds of the jurors, and what they may have believed and to which they would apply the principles of law set forth in the instructions.

It may be that the jury believed that the plaintiff, though in the exercise of care, did not see the wagon and mules of the defendant owing to the garbage wagon or the pillar or both being in between. Also, it may be that the jury believed that the driver of the defendant's wagon, considering the circumstances, that he was about to drive over a crosswalk and that there was a garbage wagon at his left, a little in the lead, was driving at an excessive rate of speed, or at least without appropriate care. And, yet, in view of instruction numbered 7, have concluded that it was the law that it made no difference whether the defendant's driver, as he approached the crosswalk, was driving carefully

or not; that there could be no liability unless he "had notice or, by the exercise of ordinary care could have had notice of the dangerous position that plaintiff was in, long enough before the injury was inflicted to enable 'him' to form an intelligent opinion as to how the collision might be avoided and apply the means of avoiding such collision."

In other words, instruction numbered 7 . may have eliminated, from the consideration of the jury, the whole subject of negligence as it pertained to the driving of the defendant's wagon save that negligence which might have occurred after having had, or an opportunity to have, some notice of the dangerous situation of the plaintiff.

It is the law that if he was driving the defendant's wagon negligently as he approached the crosswalk and before he had any knowledge that the plaintiff was in a dangerous position, he might still be guilty of negligence, even though he did all he could to avoid the accident as soon as he perceived the danger of the plaintiff. In *Nelson v. Chicago City Ry. Co.*, 163 Ill. App. 98, where a somewhat similar instruction was considered, the court said that a motorman was not free from negligence merely because he exercised ordinary care to avoid the accident "as soon as it was apparent or ascertainable to him, in the exercise of reasonable and ordinary care, that the plaintiff was crossing the track or getting on or near the track in a position of danger, regardless of the rate of speed at which he was running the car as he approached the place of the accident." The court also said: "If he was running the car at such a speed that he could not control it, or was negligent in any other manner, causing the injury, as he approached the place of the accident and before it was apparent to him that the plaintiff was in a position of danger, the defendant would be guilty of negligence, notwithstanding the motorman did all he could to avoid the accident as soon as it was

apparent to him that the plaintiff was getting upon or near the track in a position of danger. The question of liability for negligence in this case did not depend wholly upon the care exercised by the particular motorman after he saw the danger, if he had negligently created a situation which he could not control in time to avoid the accident, and such negligence contributed to the accident.''

What transpired immediately before the actual collision is important, particularly considering the position of the plaintiff, the position of the pillar, that of the garbage wagon and the wagon of the defendant, as shown by the evidence. It may be said that greater care is required in such a situation than in the average one where the foot passenger and driver may without any particular effort be aware of each other's presence. In the instant case, however, the driver of the defendant's wagon knew he was approaching a crosswalk and that there was a garbage wagon at his left, slightly in advance of him, and that the pillar of the elevated railroad was there and would to some extent obstruct his vision of the crossing, and, having that knowledge, it behooved him, prior to reaching the crosswalk, to exercise that care which the average man would be expected to exercise under those somewhat unusual circumstances.

Instruction numbered 16, which it is contended by counsel for the defendant should not have been given, is as follows:

''The court instructs the jury that if you believe from the evidence and under the instructions of the court that the plaintiff suddenly, and without any negligence or fault on the part of the defendant, placed himself in a position of danger, then in order to charge the driver of defendant's wagon with the duty of avoiding the collision the plaintiff must show by a preponderance of the evidence that the circumstances were such that the driver of defendant's wagon had time and opportunity to become conscious, by the ex-

ercise of ordinary care, of the facts giving rise to such a duty and a reasonable opportunity to perform it. And if you further believe from the evidence that the circumstances as shown by the evidence did not charge the driver of defendant's wagon with the duty as thus defined, or if you believe from the evidence that the driver of defendant's wagon did not have a reasonable opportunity to perform, by the exercise of that degree of care elsewhere required in these instructions, such duty as thus defined, then you should find the defendant not guilty.''

It is claimed that it was error to give this instruction on the ground that there was no evidence on which to base it. In *Chicago Union Traction Co. v. Browdy*, 206 Ill. 615, the court held that an instruction quite similar to that numbered 16 should have been given. The facts, however, were quite different from those in the instant case. In the *Browdy* case, the motorman in charge of the street car was driving his car towards the rear of a horse and wagon which was standing still at the curb and, when the street car neared the place where the horse and wagon were, the horse was suddenly driven onto the tracks and the rear of the wagon was struck by the street car. In that case, as the court said, the peril to the driver of the wagon ''did not commence and become apparent until he turned upon the track. Then, and not until then, was the motorman required to act.'' The court further said that the motorman was not required ''to assume that when his car was too near the horse and wagon to permit him to stop his car before it would strike the wagon the appellee would suddenly and without notice drive upon the track. He was only required to operate his car with reference to perils which reasonably might be expected to occur.'' In the instant case, one of the perils which reasonably might be expected to occur, considering the position of the garbage wagon and the pillar of the elevated road and the fact that it was a crosswalk which the driver was about to go over, was that a foot pas-

senger might be crossing, and be in the exercise of care, and yet not be seasonably seen by the driver of the defendant's wagon. In such a situation it was the duty of the driver of the defendant's wagon to bear in mind all the circumstances as they appeared to him and as they were discoverable by ordinary care, and "to operate his car with reference to perils which reasonably might be expected to occur."

It is contended by counsel for the plaintiff that it was error to give to the jury instruction numbered 9. That instruction is as follows:

"You are instructed that if you find from the evidence and under the instructions of the court that the injury to the plaintiff was caused by a mere accident or was caused by some cause for which the defendant was not to blame, or was brought about by some cause other than the acts of negligence charged in plaintiff's declaration, then you are instructed that in either event the plaintiff cannot recover."

In *City of Chicago v. Sheehan,* 113 Ill. 658, where the driver of a hose cart brought suit against the city to recover for an injury received as the result of a collision between the hose cart and a pile of stone left in the street, the court held that the changing of an instruction by a trial judge, which instruction directed the jury to find the defendant not guilty if the tipping over of the hose cart was the result of a mere accident, by adding the words, "and without negligence of the defendant," was not only proper, but stated that, without the addition, the instruction was liable to mislead the jury.

In *Nelson v. Richardson,* 108 Ill. App. 121, which was a suit for damages resulting from alleged negligence of the defendant, the court, in commenting upon an instruction which used the following words, "if they believe from the evidence that the injury sustained by the plaintiffs' intestate was purely accidental, then the jury should find the defendants not guilty," said: "An accident, in legal contemplation, is that

Paulsen v. McAvoy Brewing Co., 226 Ill. App. 605.

which happens without the fault of anybody.  *  *  *
But the word is commonly used to denote what hap-
pens unexpectedly and without design, although it may
be owing to the fault or neglect of some one; and we
think the instruction open to criticism in omitting the
element that an accident, in order to exclude liability
of the defendants, must have been without their fault
or negligence." The court then cites the *Sheehan* case;
*Illinois Steel Co. v. McFadden,* 196 Ill. 344, and *Schnei-
der v. Provident Life Ins. Co.,* 24 Wis. 28.

In the *McFadden* case, *supra,* where an employee
was ordered by his master to do a dangerous act, and
in which case an instruction was given which was in
part as follows: "You are instructed that the Steel
Company, defendant herein, is not to be held liable for
any case of accident," etc., the court said: "The vice
of the instruction is that it relieves appellant from li-
ability in the case of accident without the qualification
that there has been a previous exercise of such care
and diligence on the part of the master as is above
specified. The servant does not agree to take the risk
of every accident or casualty without reference to the
previous exercise of diligence and care on the part of
the master to avoid such accident or casualty." Citing
*City of LaSalle v. Kostka,* 190 Ill. 130, and *Noyes v.
Smith,* 28 Vt. 64.

In *Webster Mfg. Co. v. Nisbett,* 87 Ill. App. 551, an
instruction was considered as properly given which
contained the words "mere accident," but those words
were followed by the words: "and neither the defend-
ant nor the plaintiff were the cause thereof." In
*Barnett & Record Co. v. Schlapka,* 110 Ill. App. 672,
the court held that the insertion by the trial judge of
the words "and that could not have been reasonably
foreseen" in an instruction which was to the effect
that if the plaintiff's injury was the result of an acci-
dent without the fault of either the plaintiff or defend-
ant the plaintiff could not recover, was proper. It will

be observed that in that case the word accident in the instruction was followed by the words "without the fault of either plaintiff or defendant."

There is considerable disagreement as to the meaning of the word "accident." It is used with various connotations. According to the lexicographers an accident is a sudden unforeseen and unexpected event. Frequently in insurance cases it is given a very different meaning from what it is entitled to in instructions in negligence cases. One of the earliest legal definitions is as follows: "An accident may be defined as an event happening unexpectedly and without fault." *Leame v. Bray*, 3 East 593. Some courts have held that the words, "mere accident," are to be understood as excluding negligence or carelessness. In this State, however, the decisions seem quite definitely to hold that the word "accident," or the phrase, "mere accident," if used in an instruction upon the subject of negligence, connotes something more than that which is unexpected and unavoidable and without fault or blame, and, accordingly, should always be qualified so as to exclude the attribute of negligence.

It will be observed that the three instructions were all mandatory and, therefore, were not cured by other instructions. *Illinois Iron & Metal Co. v. Weber*, 196 Ill. 526.

Considering the facts which the evidence tended to prove, it was important that the instructions which were given the jury should be reasonably simple and exact and inform them accurately concerning the principles of law which were applicable; and being of the opinion that the three instructions which are complained of, each of which was mandatory, may well have misled the jury, the judgment should be reversed and the cause remanded for a new trial.

While this cause was pending in this court, counsel for the defendant moved to strike from the record the bill of exceptions, or in the alternative that the judg-

ment be affirmed. The contention is made in support of that motion that the bill of exceptions was not filed within ninety days after the judgment and that no order was entered within said ninety days extending the time for filing the bill of exceptions after that time. The trial in the court below was had before Judge Charles A. Williams of the circuit court. The jury, on April 12, 1921, returned a verdict finding the defendant not guilty. The judgment on that verdict was entered May 28, 1921, with an order that the bill of exceptions be filed within ninety days. On August 25, 1921, the bill of exceptions was presented to Judge Rush and he stamped his signature thereon. The record does not show any reason why the trial judge, Charles A. Williams, did not mark the bill of exceptions presented on August 25, 1921, or why he did not sign it on September 13, 1921. After the ninety days allowed for filing the bill of exceptions had expired, and on September 13, 1921, Judge Rush signed a bill of exceptions by fixing his name above the line marked "Judge." The bill of exceptions recites that it was signed September 13, 1921, *"nunc pro tunc"* as of August 25, 1921.

On the last page of the bill of exceptions and below the last signature, thereon, of Judge Rush, appears the following: "Approved evidence and instructions this 1st day of September, A. D. 1921. Winston, Strawn, Shaw, Attorneys for defendant."

As to the claim that it does not appear in the record why the trial judge, Charles A. Williams, did not mark the bill of exceptions presented on August 25, 1921, nor sign it on September 13, 1921, this court, as was said in *Vahle v. Brackenseik,* 145 Ill. 231, "will take judicial notice of who are the judges of the various courts of record of the State and of their terms of office," etc. There was an election of twenty circuit judges on June 6, 1921, and on that date the term of office of Judge Williams expired, and as Judge George

Fred Rush was elected and became a judge of that court on that date (*People v. Sweitzer,* 280 Ill. 436), there is no doubt that he had authority to sign, as he did, the bill of exceptions both on August 25, 1921, and September 13, 1921. None of the points made by counsel for the defendant in support of its motion to strike the bill of exceptions is tenable. In view of the decisions that the court will take judicial notice who are the judges of the various courts of record, that a bill of exceptions may be signed by the successor of a trial judge or by any other judge of the court in which the cause was tried, that a bill of exceptions presented within the time allowed for filing, where the date of presentation appears on its face, may later be signed *nunc pro tunc* as of the date of presentation, and that a failure to enter an order for filing the bill *nunc pro tunc* is considered a mere irregularity, we are of the opinion that the motion to strike the bill of exceptions should not be allowed. *People ex rel. Dunn v. Higbee,* 172 Ill. 251; *Village of Hinsdale v. Shannon,* 182 Ill. 312; *City of East St. Louis v. Vogel,* 276 Ill. 490; *City of Lake Forest v. Buckley,* 276 Ill. 38.

The judgment, herein, is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

THOMSON, P. J., and O'CONNOR, J., concur.