(No. 22314.—

CYRENA LELA THOMAS, Admx., Plaintiff in Error, *vs.*
ERNEST D. BUCHANAN, Defendant in Error.

*Opinion filed June 15, 1934—Rehearing denied October 3, 1934.*

ERICH E. PACYNA, and OSCAR M. MEUSEL, for plaintiff in error.

McKENNA, HARRIS & SCHNEIDER, (JAMES J. McKENNA, and ABRAHAM W. BRUSSELL, of counsel,) for defendant in error.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The plaintiff in error (hereinafter called the plaintiff) brought suit in the circuit court of Cook county against the defendant in error (hereinafter called the defendant) to recover damages for the death of the plaintiff's husband, occasioned by injuries received by him in an automobile accident. A verdict was returned in favor of the plaintiff for $4125, on which judgment was entered. On appeal by the defendant to the Appellate Court that court reversed the judgment without remanding the cause. The case has been brought to this court upon *certiorari*.

Hiram Thomas, the husband of the plaintiff, was on the night of November 30, 1931, riding in a Ford automobile owned and driven by Earl Anderson. Anderson's automobile and the automobile of the defendant collided, and thereby the plaintiff's intestate received injuries from which he died. The Appellate Court held that Anderson was the agent of the deceased, and that Anderson was guilty of contributory negligence which, by reason of the

relationship of principal and agent between him and the deceased, was imputable to the deceased.

The collision happened in Niles Center, in Cook county, at the intersection of Crawford avenue, which runs north and south, and Church street, which runs east and west. The automobile in which the deceased was riding at the time of the accident was being driven east on Church street and the automobile driven by the defendant was moving north on Crawford avenue. In each of the streets there was a sign marked "Caution—Dangerous Intersection," located about two hundred feet from the intersection of the two streets. The village of Niles Center had caused to be placed at a point thirty feet south of the south line of the intersection of Church street and Crawford avenue, in the pavement in the north-bound traffic lane, a flexible black rubber sign about six inches high and about twenty inches long, with the word "Stop" thereon in orange-colored letters about five inches high. About thirty feet south of the south line of the street intersection, and about two feet east of the east line of the pavement, there was located a stop sign, the top of which was about seven feet above the surface of the ground. On this sign were the words, "Stop—State Road." This sign proper was about two feet wide and three feet high. These signs were visible at night from a point at least one hundred feet south of them. The east lane of Crawford avenue is twenty-one feet wide, the center lane, which is a parkway, is fifteen feet wide, and the west lane is twenty-one feet wide. The paved portion of Church street is about twenty feet in width. Both pavements are of concrete. It was clear and dark on the night of the accident and the street pavements were dry. The deceased was riding in the front seat of the Anderson car and to the right of Anderson, the driver. The evidence shows there was nothing to obstruct the view of the caution sign or either of the stop signs on Crawford avenue. The Ford automobile was struck on the right side. The

defendant testified in his own behalf over the objection of the plaintiff, but no error is assigned upon the record in this court upon the ruling permitting him to testify.

The defendant testified that he was driving his Nash automobile north on Crawford avenue. There were two men, named O'Brien and Mammerow, in the car with him. The defendant stated that he had never driven along Crawford avenue before and that he did not see the caution or stop signs; that he did not know there was a street intersection at the place where the accident happened; that he did not slacken his speed at any time as he approached the street intersection, and he was running at the same rate of speed—about thirty to thirty-five miles per hour—at the time the collision occurred; that O'Brien, who was sitting beside him, first called his attention to the approaching Ford automobile when it was about four feet from him. O'Brien testified to substantially the same matters as the defendant. Mammerow did not testify. The defendant stated that Mammerow was ill. The lights on both cars were burning at and prior to the time of the collision.

Two questions are presented here for the determination of the court: (1) What was the relationship of the plaintiff's intestate to the driver of the Ford automobile? (2) Was the collision due to the contributory negligence of the driver of the Ford automobile?

The evidence showed that the deceased was employed by an electric washing machine company in repairing and selling washing machines for his employer. By reason of the nature of his work most of his time was spent outside of his employer's place of business. On the evening in question, he, together with a co-employee, delivered a washing machine at the Anderson home and remained there to demonstrate the machine. Anderson testified, in substance, that Thomas rode in the witness' car to see a lady living in that neighborhood about buying a washing machine, but she was not at home. Thomas and Anderson were re-

turning by way of Church street when the accident happened. On cross-examination Anderson testified that he was doing Thomas a favor in driving him to this lady's home. There is no evidence of any conversation between Thomas and Anderson with reference to any arrangement made or the circumstances under which Anderson took Thomas except as herein stated. Whether Anderson was going out for a pleasure ride and invited Thomas to accompany him, telling him he would leave him at the prospective customer's home, or whether Thomas requested Anderson to take him, does not appear from the evidence.

It was contended by the defendant in the Appellate Court, and the same contention is made in this court, that in making the automobile trip during which the accident happened which cost the life of Thomas, Anderson was the agent of Thomas. The case was not tried upon that theory in the trial court. No instruction was submitted in that court upon the issue now raised as to whether Anderson was the agent of Thomas. By the sixth instruction the jury was instructed upon the subject of the plaintiff's intestate being a passenger in the automobile of and as the guest of Anderson.

The Appellate Court based its decision upon the authority of *Stoutz* v. *Nicoson,* 270 Ill. App. 28, *Hepps* v. *Bessemer and Lake Erie Railroad Co.* 284 Pa. 479, 131 Atl. 279, and *Schofield* v. *Director General,* 276 Pa. 508, 120 Atl. 449. In the *Stoutz case* there was evidence that the plaintiff was riding in the automobile of another and they were going to an ice plant for the purpose of getting ice for the plaintiff. This evidence was excluded by the court. The Appellate Court merely held that the trial court erred in excluding this evidence, and that the defendant had the right to prove, if he could, that the driver of the automobile in driving the car was the agent of the plaintiff. The judgment was reversed, with directions to permit the defendant to show the relationship, if any, if he

could, between the driver of the car and the plaintiff, the jury to be properly instructed in regard to the element of agency. In the *Hepps case* the evidence showed that the plaintiff was a butcher, and, having orders to deliver to customers living some distance from his place of business, requested an acquaintance who owned an automobile to drive him to the delivery points. The owner of the automobile agreed to do so, and when they were crossing the railroad tracks of the defendant railroad company, the owner driving the automobile, the car was struck by a locomotive and the plaintiff was injured. The court held that under the evidence the relationship of principal and agent existed between plaintiff and the driver of the automobile. In the *Schofield case* the deceased had some coal in a yard on the south side of the defendant's railroad tracks which he wished transferred to his residence on the north side, and at his request a friend named Vernon, who could drive a motor truck, borrowed a truck and with the help of the deceased and a son of the deceased began moving the coal. The truck was driven onto the railroad tracks by Vernon without stopping to look or listen. The court held that Vernon was in the employ of the deceased in transporting the coal, and that the former's negligence was chargeable to the latter and defeated the plaintiff's action.

In the instant case there is no evidence that the deceased requested Anderson to drive him to the home of the prospective purchaser of the washing machine. None of the cases cited are authority or controlling under the condition of the record here. If there was any issue made in the trial court upon the relationship between the deceased and the driver of the Ford automobile there was sufficient evidence to go to the jury on such issue, and the trial court would not have been warranted in taking the case from the jury on that issue even though the evidence should show that the driver of the Ford automobile was guilty of contributory negligence.

The evidence showed that on the return trip Anderson drove east on Church street at the rate of thirty to thirty-five miles per hour. Thomas was sitting on his right. Both men were looking forward, watching the road. Anderson was familiar with Church street. When the Ford automobile was from one hundred to one hundred and fifty feet west of the intersection of Crawford avenue and Church street Anderson saw the lights of the defendant's car approaching the intersection from the south, on Crawford avenue. The defendant's car at that time was about two hundred feet south of the intersection. Anderson and Thomas were not talking. Anderson reduced the speed of his car to about twenty miles per hour when he first saw the automobile of the defendant approaching on Crawford avenue, and was traveling at that speed just prior to the collision. The brakes on the Anderson car were in good condition, and at a speed of twenty to twenty-five miles per hour he could stop within five feet. There were some trees and bushes between Crawford avenue and Church street. The street intersection was not lighted. Just before the accident happened, and when the Ford was about five feet west of the approaching car, Thomas called out to Anderson, "Look out!" He swerved his car to the left but was unable to avoid the collision.

The evidence tends to prove that Church street is a State road. or through street. There can be no doubt but that the defendant was guilty of negligence. If he had used his powers of observation he would have seen the cautionary and stop signs. The law will not permit him to say he did not see these signs when, if he had properly exercised his faculty of sight, he would have seen such signs. *Greenwald* v. *Baltimore and Ohio Railroad Co.* 332 Ill. 627.

It is contended by the defendant, under the facts proved, that Anderson was guilty of negligence which contributed to the happening of the accident, and that therefore that

question becomes one of law and not of fact. The question of contributory negligence is ordinarily one of fact for the jury to decide under proper instructions. Contributory negligence becomes a question of law only when it can properly be said that all reasonable minds would reach the conclusion, under the facts stated, that such facts did not establish due care and caution on the part of the person charged therewith. *Chicago and Eastern Illinois Railroad Co. v. Crose,* 214 Ill. 602; *Morrison v. Flowers,* 308 id. 189.

Anderson was familiar with Crawford avenue and knew that the one caution sign and the two stop signs were there, and while under ordinary conditions he had the right of way over the automobile of the defendant, yet that did not of itself relieve him or the deceased from the exercise of due care and caution on their respective parts. However, Anderson and the deceased had the right to assume that the driver of the automobile approaching on Crawford avenue would not negligently fail to reduce the speed of his automobile as he approached such street intersection and would at least have his car under control so as to give preference of the right of way to Anderson, if necessary for the safety of the occupants of the car approaching the street intersection from the west. *Dukeman v. Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 237 Ill. 104; *Soucie v. Payne,* 299 id. 552; *Schlauder v. Chicago and Southern Traction Co.* 253 id. 154; *Chicago City Railway Co. v. Fennimore,* 199 id. 9; *Chicago, Burlington and Quincy Railroad Co. v. Gunderson,* 174 id. 495.

While the deceased was required to exercise due care and caution for his own safety while riding in the automobile of Anderson, yet, so far as the evidence discloses, he had no authority over Anderson in the operation of the automobile, and no agency being shown, the negligence of Anderson, if any, cannot be imputed to the deceased in a suit brought by his legal representative against a third

person to recover damages for injuries sustained by him which occasioned his death. (*Nonn* v. *Chicago City Railway Co.* 232 Ill. 378.) The question of due care on the part of the plaintiff's intestate is always a question of fact to be submitted to a jury whenever there is any evidence in the record which, with any legitimate inference that may reasonably and legally be drawn therefrom, tends to show the exercise of due care on the part of the deceased. We are not able to say, under the facts proved, that the conduct of Anderson at and immediately prior to the collision in question was such as to have warranted the trial judge in deciding, as a matter of law, that either Anderson or Thomas was guilty of contributory negligence. If Thomas was not guilty of contributory negligence and was merely a passenger or guest of Anderson, the trial court would not have been warranted in instructing the jury to find for the defendant. There was sufficient evidence in the record to go to the jury upon the issue as to whether Thomas, at and for a reasonable time prior to the collision in question, was in the exercise of ordinary care and caution for his own safety. The trial court not being warranted in instructing the jury to find against the plaintiff upon the two issues stated, the Appellate Court was not justified in reversing the judgment without remanding the cause for a new trial and for a submission to a jury upon those issues. *Pollard* v. *Broadway Central Hotel Corp.* 353 Ill. 312.

The judgment of the Appellate Court is reversed and the cause is remanded to that court, with directions to consider the assignment of errors other than the two here decided, and either to affirm the judgment of the trial court or to reverse the judgment and remand the cause for a new trial. *Reversed and remanded, with directions.*