Milton S. Osborne, Plaintiff-Appellee, v. Gerald D. Redell and Donald Stancil, Defendants-Appellants.

Gen. No. 11,216.

Second District, Second Division.

July 16, 1959.

Rehearing denied August 14, 1959.

Released for publication August 14, 1959.

Besse & Besse, of Sterling (Robert W. Besse, L. Vernon Frye, of counsel) for defendants-appellants.

Reidy, Katz, McAndrews, Durkee & Telleen, of Rock Island, and Bull, Ludens & Potter, of Morrison (Isador I. Katz, Mason Bull, of counsel) for plaintiff-appellee.

JUSTICE CROW delivered the opinion of the court.

The plaintiff, Milton S. Osborne, brought this action to recover for personal injuries and damages to his car, sustained by him through the alleged negligence of the defendants, Gerald D. Redell and Donald Stancil, in driving the automobile of Redell. Following a trial before the court and a jury, a verdict was returned in favor of the plaintiff, for $12,000, upon which the trial court entered judgment.

At the close of the plaintiff's case and again at the close of all the evidence, the defendants moved for a directed verdict, which motions were overruled. After the verdict, the defendants filed a post-trial motion to vacate the judgment for the plaintiff and enter a judgment for the defendants, or, in the alternative, to grant a new trial, or, in the alternative, that the damages be reduced as excessive. The post-trial motion was overruled and this appeal by the defendants followed. No question is raised on the pleadings.

The defendants here urge error in two particulars: (1) that the plaintiff was guilty of contributory negligence as a matter of law and that the trial court should have directed a verdict in favor of the defendants; and (2) the trial court erred in giving one of the plaintiff's instructions and refusing one of the defendants' instructions to the jury.

 The well-established rule in jury cases of this type is that contributory negligence is ordinarily and preeminently a question of fact to be decided by the jury. The question of contributory negligence becomes a matter of law for the trial judge or this court only when it can be said that all reasonable minds would reach the same conclusion under a particular factual situation, that is, that the facts in evidence did not

establish due care and caution on the part of the person charged with contributory negligence: De Legge v. Karlsen (1958) 17 Ill.App.2d 69; Pinkerton v. Oak Park Nat. Bank (1958) 16 Ill.App.2d 91; Thomas v. Buchanan (1934) 357 Ill. 270. Only if there is no competent evidence tending to show the plaintiff was exercising due care or to raise a reasonable inference of such care,—where the court can clearly see that the injury was the result of the negligence of the party injured,—may the question be considered a question of law for the court: Illinois Cent. R. Co. v. Oswald (1930) 338 Ill. 270.

 A motion by the defendant to direct a verdict is in the nature of a demurrer to the evidence. The rule is that in considering such a motion the trial court should consider the evidence produced on the part of the plaintiff in the light or aspect most strongly in the plaintiff's favor and give it every reasonable inference and intendment favorable to the plaintiff. The court may not, on such a motion, weigh the evidence. This rule follows the proceedings into the appellate court on an appeal and if we should find that there is competent evidence, standing alone, which, with all reasonable inferences and intendments therefrom, considered in an aspect favorable to the plaintiff, tends to support the plaintiff's claim, we cannot find error in that respect, and then it becomes our duty to consider other alleged errors, if there be such: Blumb v. Getz (1937) 366 Ill. 273; Humbert v. Lowden (1944) 385 Ill. 437; Lindroth v. Walgreen Co. (1950) 407 Ill. 121.

A review of the evidence, including the photographs in evidence, reveals that the accident which caused the plaintiff's injury took place October 26, 1956 at approximately 5:45 p. m., it being dusk, on or at the southeasterly end of a bridge on Spring Hill Road spanning the Rock River near Erie, Illinois. The weather was clear. Spring Hill Road is a two-lane black top highway, approximately 26 feet wide. The

bridge and Spring Hill Road at this point run in a southeast-northwest direction. The road turns rather sharply to the northeast at a curve some 800 feet away, or southeast, from the bridge, that being the direction from which the plaintiff was approaching. The Spring Hill Road is almost at a right angle at that curve in relation to the latter bridge. The road is, however, straight, southeast-northwest, at the scene of the incident at the bridge. A gravel park road intersects, on an upgrade, the generally southwest side of Spring Hill Road approximately 70–100 feet from the southeasterly entrance to the bridge. It is about 100 feet from a stop sign on the far, or right, or southeasterly side of the park road to the bridge entrance, and the park road or opening is about 30 feet wide. The park road extends in a generally southwest direction at the point of its intersection with Spring Hill Road, and it does not run across Spring Hill Road to the northeast,—it simply extends to the southwest off that road.

The defendants were called as adverse witnesses under Section 60 of the Civil Practice Act [Ill. Rev. Stats. Ch. 110] and testified, in substance, that the defendant Stancil was driving the car at the invitation of the defendant Redell, the owner of the car, who was seated in the right front seat beside Stancil. It was dusk and the headlights of the automobile were on low beam. The defendants had driven out from Erie southeasterly on the Spring Hill Road, crossed the bridge, turned off that road onto the gravel park road, drove down into the park, turned around, then came back up the gravel park road and approached the Spring Hill Road, preparatory to turning left or northwesterly thereon to return to Erie. Both testified the car stopped at the stop sign situated about 10 feet from the Spring Hill pavement. Both testified they had an unobstructed view 800 feet to the right or southeasterly from the stop sign along the Spring Hill Road, from which di-

198

rection the plaintiff was approaching. The driver and passenger testified they each looked both ways and neither one of them saw the plaintiff's car approaching from the right. The gravel park road leads up from the Rock River and a park and enters Spring Hill Road only from the southwesterly side and the defendants' car, when poised at the stop sign, before making any turn, was then generally facing in such a position that its headlights would have been shining generally toward the plaintiff's car approaching from the southeast at a distance down the Spring Hill Road.

The defendant Stancil testified he never at any time before the accident saw the plaintiff's car nor the lights of his car approaching although there was nothing to obscure his view for at least 800 feet; the first he knew of the plaintiff's car was when Redell said a car was coming and then two seconds later it went around their car on the right. The defendant Redell said he was never aware of the plaintiff's car until about two seconds before it went by him on the bridge; he said "there's a car"; and that at that time the lights were on on the plaintiff's car. There is no showing of any signals for a left turn by the defendants' car onto the Spring Hill Road but the defendants claimed to have stopped for the stop sign as they came up to that road.

Milton Osborne, the plaintiff, testified, in substance, that he was familiar with the Spring Hill Road, had been driving in a generally northwesterly direction thereon approximately 60 m. p. h. towards Erie, in the right hand lane, and had the headlights of his car lighted. As the plaintiff came around or straightened out around the curve southeasterly of the scene of the incident and approached the bridge he was looking generally toward the headlights of another car (the defendants') which were apparently facing him in the left or opposite lane of Spring Hill Road. He let up his foot feed, did not put it on again, and continued

199

on, with no particular attention to that car, which appeared to him to be proceeding towards him on the southwesterly or opposite side of the highway. The plaintiff continued toward the bridge on his own right half of the highway until he became suddenly aware of taillights about 10 feet immediately in front of him apparently either stopped or moving at a slow rate, and occupying not only a substantial portion of the right side of the road at the entry to the bridge but also generally somewhat in the center of the road. There was no other traffic at the time in either direction.

A fair deduction from the evidence is that at about this juncture, the defendant Stancil, coming up on the gravel park road, proceeded out into Spring Hill Road at about 8 to 10 m. p. h. and began to execute a left turn, northwesterly, towards Erie. His turn had not been quite fully completed (the defendants say they had almost completed the turn) as he reached the southeast entrance to the bridge, a scarce 70–100 feet from the intersection of the gravel park road and the Spring Hill Road. The defendants' automobile at this point was travelling substantially in the right center of the roadway within about 7 feet of the right hand side and directly in the path of the plaintiff's automobile approaching from the right,—one of the defendants said their car may not have been perfectly straight (with the road) but was in that general direction,— and the defendants evidently admit they were over (or left of) the center line, but not more than a foot they say.

In making this left turn the headlights of the defendants' automobile, set at low beam, were, of course, turned left at the beginning of the turn and hence lost to the view of the oncoming driver, the plaintiff, approaching from the right. Thus, the plaintiff suddenly saw taillights a few feet in front of him on the approximate center or right hand side of the road instead

200

of the headlights which he had previously very shortly before seen facing him apparently on the left hand side of the road as if from a vehicle approaching on Spring Hill Road from the opposite direction.

The plaintiff testified he could not go around the defendants' car to the left because that automobile was in the center of the roadway. The plaintiff made a quick decision to stay in the right hand lane in which he was travelling and endeavored to pass the defendants' automobile in the space between the right side of that car and the right side of the paved portion of the highway. He got past the defendants' automobile, but just as he did his right rear wheel hit the catwalk of the bridge, and threw his car into a skid into the left hand side of the bridge. The plaintiff's automobile then went ahead on the bridge on the left side of the roadway about 250 feet, struck a post, and came to rest against the bridge railing or balustrade on the left side. The two cars did not come into contact with each other. The plaintiff was going about 40 m. p. h. when his right rear wheel hit the catwalk of the bridge. The roadway between the catwalks on the bridge is 24 feet wide,—some two feet narrower than the road itself as it leads up to the bridge. The plaintiff's lights on his car were on after it had stopped.

The defendants emphasize that the plaintiff did not again notice the headlights of the defendants' car after first observing them on his left when 800 feet away to the southeast and until he saw the defendants' tail-lights in the middle of Spring Hill Road. The fact is, as is now known, that, instead of those headlights being those of a car actually proceeding opposite to the plaintiff on the left half of the highway, they were headlights of the defendants' automobile stopped near the stop sign and off the highway to the left, creating an illusion of an automobile being actually on the road approaching the plaintiff from the opposite direction.

When, however, the defendants' car, so placed, then made a left hand turn away from the direction from which the plaintiff was proceeding, the headlights of the defendants' car simply disappeared from the plaintiff's view.

The evidence is relatively simple and for the most part uncontroverted, though the situation is somewhat unusual. Considering the record as a whole, and taking the evidence, together with its reasonable inferences and intendments, in its aspect most favorable to the plaintiff, there are ample grounds for the jury's conclusion that the defendants at night recklessly entered upon a thru public highway on which the plaintiff was rightfully travelling in his proper right lane, with due care, without yielding to the plaintiff the right of way, making a sudden hazardous turn in front of the plaintiff, creating a sudden hazard, and the plaintiff, while seeking to avoid collision with the defendants' car, was caused to wreck his own car and to sustain injuries. There was ample evidence from which the jury could, and presumptively did, conclude that the plaintiff was faced with a sudden danger not of his own making, and that he was in the exercise of due care for his own safety and in control of his car, under all the circumstances, and, conversely, that the defendants were guilty of negligence which was the proximate cause of the collision. The plaintiff was bound to exercise due and reasonable care and caution under the circumstances, but he had the right to assume that the driver of the defendants' car would not negligently approach or enter into Spring Hill Road and would at least have his car under such control as to be able to give preference of the right-of-way to what should have been the plainly visible plaintiff's car approaching from the right on the preferential highway, if necessary, for the safety of the plaintiff: Thomas v. Buchanan (1934) 357 Ill. 270. Anticipation of negligence on the part of others

is not a duty which the law imposes upon travelers upon the highway: Humbert v. Lowden (1944) 385 Ill. 437.

As to the question of contributory negligence, as raised by the defendants, there is no theory, under the circumstances, under which to conclude, as a matter of law, that due care for his own safety required of the plaintiff that he do differently than he did. Whether or not a person brought face to face with a sudden emergency such as this, not of his own creation, has acted with due care for his own safety is to be determined by the circumstances at the time and his method of conduct. If what was done was no more than might have been expected from an ordinarily prudent person, placed in like circumstances, then we cannot say, as a matter of law, that due care is wanting. And if in the situation presented there is room for reasonable minds to differ as to the proper inference or conclusion to be drawn, as there is here, the question is one for a jury. It cannot be here said that the action of the plaintiff was clearly and palpably negligent, and hence it is not within the province of the court to substitute its judgment for that of a jury which is provided for the purpose of deciding this as well as the other questions of fact in the case: Blumb v. Getz (1937) 366 Ill. 273. There is no complete absence of probative facts to support the inference of due care drawn by the jury here: Lindroth v. Walgreen Co. (1950) 407 Ill. 121. Hogrefe v. Johnson (1933) 271 Ill. App. 469, Johnson v. Kushler (1933) 269 Ill. App. 553, and Sumner v. Griswold (1949) 338 Ill. App. 190 are representative cases cited by the defendants on the merits, but we do not consider the facts in those cases so substantially similar to those here involved as to militate against our view. In view of the evidence and the reasonable inferences and intendments that may be drawn therefrom, we are of the opinion that the plaintiff was not

guilty of contributory negligence as a matter of law. We are not disposed here to interfere with the judgment of the twelve jurors and the trial judge on this point: Pantlen v. Gottschalk (1959) 21 Ill.App.2d 163; Cloudman v. Beffa (1955) 7 Ill.App.2d 276.

█ Reversible error is further urged by the defendants for the giving by the trial court of the plaintiff's instruction No. 4 defining the plaintiff's duty under a sudden danger situation. The defendants argue that there is not only the objection that no emergency was present under the facts, but also that the instruction is improper in itself for the reason that it does not take into consideration the conduct of the plaintiff prior to the appearance of the alleged sudden danger. The instruction was as follows:

"The Court instructs the jury that if the plaintiff, Milton S. Osborne, without fault on his part, immediately before the collision in question in this case, was confronted with sudden danger or apparent sudden danger and that immediately before the appearance of said sudden danger he had been operating his automobile with ordinary care and caution, as otherwise defined in these instructions, then the obligation resting upon him in the face of said sudden danger or apparent sudden danger to exercise ordinary care for his own safety, did not require him to act with the same deliberation or foresight which might have been required under ordinary circumstances."

█ This instruction is not peremptory in character. What we have already said in reviewing the evidence is sufficient to indicate our belief that there was sufficient evidence from which the jury could conclude there was an emergency, or sudden danger, or imminent peril presented by the facts. It clearly covers, as an instruction of this type should, the conduct of the plaintiff prior to the appearance of

the alleged sudden danger,—observe the language "without fault on his part, immediately before the collision in question in this case," and "that immediately before the appearance of said sudden danger he had been operating his automobile with ordinary care and caution, as otherwise defined in these instructions." In fact, in this respect, the instruction is even more cautious and fair or favorable to the defendants than the similar types of instructions involved and approved in Chicago Union Traction Co. v. Newmiller (1905) 215 Ill. 383; Kavanaugh v. Parret (1942) 379 Ill. 273; and Budovic v. Eschbach (1953) 349 Ill. App. 163. See also: Hemphill, Ill. Jury Instructions, Vol. 2, Sec. 4042. Moreover, the plaintiff's given instructions Nos. 6, 14, and 17, as to which the defendants do not complain, and the defendants' given instructions Nos. 7, 8, 9, 11, and 12 amply and additionally relate to and cover the subject of the plaintiff's alleged contributory negligence. We are of the opinion that the instruction, under these circumstances, is upon one of the issues raised by the pleadings and the evidence, is justified by the evidence, is upon a part of the plaintiff's theory of the case, is correct in law, and is a sufficient guide to the jury, considering, additionally, all of the instructions as a series. It is not open to the objections advanced and is not reversible error. McLaren v. Byrd, Inc. (1938) 296 Ill. App. 345, Sullivan v. Heyer (1939) 300 Ill. App. 599, Paulsen v. McAvoy Brewing Co. (1922) 226 Ill. App. 605, Blumb v. Getz (1938) 294 Ill. App. 432, and Nelson v. Chicago City Ry. Co. (1911) 163 Ill. App. 98, cited by the defendants, did not involve a sudden danger, sudden emergency, or imminent peril instruction phrased as is the one here concerned, and the facts in none of those cases were similar to those here presented; and the same is true as to Gaiennie v. Fringer (1955) 5 Ill.App.2d 403, also cited, which, additionally, did not involve any instruc-

tions at all. The sudden danger, emergency, or imminent peril meant and intended to be referred to in an instruction of this type, where applicable, is, of course, only such danger as is caused by some agency beyond the control of the plaintiff,—not something caused by the plaintiff's own fault,—and the present instruction makes that clear and leaves it to the jury to find the essential facts, one way or the other.

Finally, the defendants complain that the trial court refused their tendered instruction No. 10 as follows:

"The court instructs the jury that the plaintiff must prove that he is free from contributory negligence and that if the jury find from the evidence that the plaintiff failed to use ordinary care in any one of the following particulars:

"Operated his said motor vehicle at a speed greater than was reasonable, or,

"Failed to pass to the left of the motor vehicle of the defendants, or,

"Failed to keep his motor vehicle under proper and sufficient control, or,

"Failed to keep a proper lookout for other motor vehicles on said highway, then the plaintiff cannot recover against the defendants."

 That tendered instruction is obscurely worded, but the more obvious and decisive objection is that, if given, the jury would have been thereby, in effect, peremptorily instructed, in part, that failure of the plaintiff to pass to the left of the defendants' vehicle was contributory negligence. Considering all of the evidence adduced, the question of fact was presented, which it was properly for the jury to decide, whether or not the plaintiff, in an emergency, under these circumstances, was able to go safely and reasonably only to his right in order to try to escape collision with the defendants' auto and whether under all the circumstances he acted as a reasonably prudent

206

man in similar circumstances would have acted. It would have been error, under these circumstances, to have given defendants' tendered instruction No. 10 and doing so would have preempted the jury's right to decide an issue of fact. The plaintiff's failure to pass to the left of the motor vehicle of the defendants, though a proper factor for the jury to consider, with all other relevant factors, was not in itself contributory negligence as a matter of law under these circumstances. The defendants refer us to no Illinois case where a similar instruction was given and approved, and the jury was otherwise here abundantly instructed by the plaintiff's given instructions Nos. 6, 14, and 17 and the defendants' given instructions Nos. 7, 8, 9, 11, and 12 on the matter of the plaintiff's alleged contributory negligence.

There being no reversible error, the record sustains the verdict and judgment and the trial court's ruling on the post-trial motion. In view of the foregoing, the judgment is, therefore, affirmed.

Affirmed.

WRIGHT, P. J. and SOLFISBURG, J., concur.