# Ledbetter, Admr., v. St. Louis & S. F. Ry. Co.

## Death Action.

(Decided December 18, 1913.   63 South. 987.)

1. *Negligence; Contributory Negligence; Burden of Proof.*—The presumption of the performance of a duty reinforced by the instinct of self-preservation supports a conclusion against negligence and casts the burden on defendant to prove contributory negligence unless the presumption is overcome by the evidence; the exception being in both cases where the doctrine of res ipsa loquitur applies.

2. *Same; Jury Question.*—Where a finding of contributory negligence must be based on inferences alone, it is the province of the jury and not of the court to draw such inferences.

3. *Railroads; Persons on Track; Jury Question.*—Where the action was for the death of a person from being struck by a railroad locomotive which was running with the tender to the front, and with no light on the forward end, and where there were no eye witnesses, plaintiff's negligence was a question for the jury to determine, and the court could not properly instruct a verdict for defendant.

(Sayre, J., dissents.)

APPEAL from Walker Circuit Court.

Heard before Hon. J. J. CURTIS.

Action by Mark Ledbetter as administrator, against the St. Louis & San Francisco Railroad Company for damages for the death of his intestate. Judgment for defendant and plaintiff appeals. Reversed and remanded.

G. W. POWELL, and GUNN & POWELL, for appellant. Count 1 of the complaint is good.—*So. Ry. v. Hyde,* 164 Ala. 162. Counts 3 and 4 were good.—*Stringer v. R. R. Co.,* 99 Ala. 397. The assignment of error most insisted upon is the giving of the affirmative charge at the request of defendant, and the following authorities are cited thereto.—Secs. 5473, 5476, Code 1906; 33 Cyc. 920, et seq.; *Lee's Case,* 92 Ala. 262; *Weatherly's Case,* 51 South. 962; *Meadow's Case,* 95 Ala. 138; *Jones' Case,* 153 Ala. 167; *Glass' Case,* 94 Ala. 589; *Haley's Case,* 113 Ala. 640; *Duncan's Case,* 152 Ala. 118; *Guest's Case,* 136 Ala. 348; *Hanna's Case,* 162 Ala. 660; *Carlisle's Case,* 52 South. 341; *Johnson's Case,* 149 Ala. 538; *Partridge's Case,* 136 Ala. 578.

BANKHEAD & BANKHEAD, for appellee. There was no evidence to support the wanton counts.—*So. Ry. v. Stewart,* 164 Ala. 171; *Carlisle v. A. G. S.,* 166 Ala. 591; *So. Ry. v. Drake,* 166 Ala. 546. The intestate was a trespasser, and could not recover on the proof of mere simple negligence.—*B. R. L. & P. Co. v. Jones,* 153 Ala. 157; *G. & A. U. Ry. Co. v. Julian,* 133 Ala. 371; *C. of Ga. v. Barnett,* 151 Ala. 407. The burden was not on defendant to acquit itself of negligence as the statute does not contemplate such a place as that at which intestate was killed.—Secs. 5473, 5476, Code 1907; *Appel v. Selma S. & S. Co.,* 59 South. 164. The

part of the statute (section 5476) shifting the burden on the railroad company is clearly unconstitutional.— 9 Minn. 239; 163 Penn. 287; 6 A. & E. Enc. of Law, 357; 97 Ga. 114; 116 Ill. 155; 23 L. R. A. 86; *Smith v. L. & N. R. R. Co.,* 75 Ala. 449; *Youngblood v. Bir. T. & S. Co.,* 95 Ala. 524; sec. 240, Constitution 1901; *S. & N. R. R. Co. v. Morris,* 65 Ala. 193.

McCLELLAN, J.—This is an action for damages for having caused the wrongful death of plaintiff's (appellant's) intestate. It is reasonably clear from the evidence and inferences to be drawn therefrom that intestate was run upon and killed by a locomotive operated, by an employee of the defendant, upon the railroad of the defendant. Under this state of the evidence, if credited by the jury as establishing the intestate's injury by a locomotive, operated by defendant's servants on its railroad, Code, § 5476, cast the burden of proof on the defendant to acquit itself of negligence, for which it was responsible, proximately causing the intestate's death, as that statute requires.—*Ex parte Sou. Ry. Co.,* 181 Ala. 486, 61 South. 881, overruling *Sou. Ry. Co. v. Smith,* 163 Ala. 174, 50 South. 390. Whether the defendant discharged the burden placed upon it by the cited statute was a question for the jury.

There was no evidence, or inference from evidence, tending to show willful or wanton misconduct as the proximate cause of intestate's death. There was no evidence, or inference from evidence, tending to show subsequent negligence, or willful or wanton misconduct, on the part of the defendant's employees, after discovery of intestate's peril. There was no eyewitness, introduced on the trial. The defendant offered no evidence. To the counts declaring upon simple negligence as the proximate cause of intestate's death, his contrib-

utory negligence, in varying circumstances, was pleaded. It was asserted, in substance, in these pleas, that intestate was contributorily negligent in omitting to stop, look, and listen before going upon the track in front of an approaching locomotive, or in remaining or loitering or lying down upon the track in front of an approaching locomotive after ordinary prudence should have suggested that he remove himself from his perilous position. The court gave the affirmative charge for the defendant at its request.

The burden of proof to sustain the defense of contributory negligence is, of course, upon the pleader; and only on that defense as pleaded can the defendant rely for acquittal of liability for an injury resulting from negligence of servants for which the defendant is responsible.—*Bromley v. B'ham R. R. Co.*, 95 Ala. 403, 11 South. 341; *Western Ry. Co. v. Williamson*, 114 Ala. 131, 145, 21 South. 827; *Sou. Ry. Co. v. Shelton*, 136 Ala. 191, 208, 34 South. 194.

In *L. & N. R. R. Co. v. Webb*, 90 Ala. 185, 194, 8 South. 518, 521 (11 L. R. A. 674), STONE, C. J., writing, these presently pertinent observations were made: "In the modern cases, many categories of fact are held sufficient to take from the jury the inquiry of contributory negligence, and direct that it be ruled on by the court as a matter of law. Of course, to come within this rule, the testimony must be sufficient in itself to bring the true and complete state of inculpating facts before the mind of the court, without the aid of inferences to be drawn, and there must be no conflict in the testimony which proves the conduct relied on as contributory negligence. If inferences are to be drawn to make the category complete, or if conflicting testimony which is pertinent and necessary to the inquiry is to be reconciled or weighed, these, in a law court,

are functions of a jury, and cannot be ruled on as matters of law." In *Tabler v. Sheffield, etc.,* 87 Ala. 309, 6 South. 197, this often approved rule was announced: "If the evidence be in conflict, or if it be *circumstantial,* or if a material fact in the case rest *in reference,* the general charge should not be given." (Italics supplied.) Our books abound in repetition and application of the familiar, quoted doctrine.

In *Bromley v. B'ham R. R. Co.,* 95 Ala. 403, 11 South. 343, it is written: "Contributory negligence being matter purely defensive under our decisions, it must follow that *there are no presumptions against* a plaintiff of a want of due care and diligence on his part, and that there is no burden on him to prove affirmatively that he exercised due care and diligence. The burden of proving contributory negligence resting on the defendant, it follows that where the proof shows injury, caused by the culpable negligence of the defendant, *and the proof is wholly silent as to contributory negligence,* the plaintiff is entitled to recover." (Italics supplied.)

In *L. & N. R. R. Co. v. Crawford,* 89 Ala. 245, 8 South. 243, by approving quotation from *Continental Imp. Co. v. Stead,* 95 U. S. 164, 165, 24 L. Ed. 403—though as quoted the word "pretended" was erroneously substituted for "presumed"—the presumption of the performance of duty enjoined, reinforced by the "instinct of self-preservation," was recognized. This presumption is evidential. It is, peculiarly, a factor in this case. It is a presumption that accords with nature. It is generally accepted, evidentially, as universal among at least the adult and normal of the race. It will support a conclusion against negligence or want of prudence, unless overcome by countervailing evidence or in those cases (of which this is not one as respects the defense

indicated) where the doctrine of res ipsa loquitur has application and effect.—*Northern Cen. Ry. Co. v. State,* 31 Md. 357, 100 Am. Dec. 69, 70; *Penn. R. R. Co. v. Weber,* 76 Pa. 157, 18 Am. Rep. 407; *Schum v. Penn. R. R. Co.,* 107 Pa. 8, 52 Am. Rep. 468; *Davis v. K. C. Belt Ry.,* 46 Mo. App. 180, 189; *Railroad Co. v. Snash-all,* 3 App. D. C. 420, 432; *Nichols v. B. & O. R. R. Co.,* 33 Ind. App. 229, 70 N. E. 183, 71 N. E. 170; *T. & P. Ry. Co. v. Gentry,* 163 U. S. 353, 366, et seq., 16 Sup. Ct. 1104, 41 L. Ed. 186; *Lyman v. B. & M. R. R. Co.,* 66 N. H. 200, 20 Atl. 976, 11 L. R. A. 364; 16 Cyc. pp. 1057, 1058.

In *Penn. R. R. Co. v. Weber, supra,* the court had under view a case where a traveler was killed at a public crossing. The question presented required consideration of the matter of the traveler's prudence in going upon the track. There the court said: "It was unquestionably the decedent's duty, as the court below in effect charged the jury, to stop and look and listen for approaching trains, before attempting to cross the track of defendant's road; and, if he failed to observe this precaution, his failure was not merely evidence of negligence, it was negligence in itself. But it does not follow that he omitted his duty in this respect, because he was killed by a passing train. Nor was it incumbent on the plaintiffs, in order to recover damages for his death, to show affirmatively that, before attempting to cross the track, he did stop and look and listen. The common-law presumption is that every one does his duty until the contrary is proved; and, in the absence of all evidence on the subject, the presumption is that the decedent observed the precautions which the law prescribes, before he attempted to cross the defendants' road. It is true that when the plaintiffs' own evidence discloses contributory negligence, there can be no re-

covery; but if it does not, the burden is on the defend-
ants to disprove care; and in such case the question of
negligence is for the jury.  Does, then, the plaintiffs'
evidence show that the decedent was guilty of contrib-
utory negligence in not stopping to look and listen for
the train by which he was killed? If so, the court should
have given a binding direction to the jury to find for
the defendants.  But, in the absence of such evidence,
it would have been error for the court to withdraw the
case from the jury, and determine, as matter of law, that
he was guilty of negligence, which contributed to his
death."  Reference to notes to 18 Am. Rep. 407, treat-
ing the *Weber Case, ante,* will show with what general
acceptance the pertinent doctrine of the *Weber Case*
has been received.

In Iowa the burden of proof is on the plaintiff "to
prove by competent evidence both the negligence of the
defendant and the absence of contributory negligence
by the deceased"—a rule opposite, in the latter respect,
to that firmly settled here.—Authorities ante. Notwith-
standing the stated rule there prevailing, the court, in
*Lunde v. Cudahy Packing Co.,* 139 Iowa, 688, 695, 696,
117 N. W. 1063, 1066, made this deliverance, as upon
apt authorities cited: "The eleventh· paragraph—the
one on which the complaint of the appellant is based—
was in the following words: 'Upon the question of
plaintiff's intestate's contributory negligence you are
instructed that where there are no eyewitnesses as to
the manner in which he was conducting himself at the
time he received the injuries, the law presumes that he
was exercising such care and caution as men of ordi-
nary prudence, judgment, and discretion exercise under
like circumstances and in relation to the same matters,
unless the facts and circumstances shown upon the
trial negative such presumption; and you should in-

dulge in such presumption in his favor, unless the facts
and circumstances developed on the trial negative such
presumption.' This in no manner relieves the plaintiff
from the burden of proving the freedom of the deceas-
ed from contributory negligence, but states the rule,
now well settled, that this burden may be met, and the
fact of due care may be established, prima facie by
showing that when last seen he was acting in the line
of his duty, without any apparent negligence, and that
there is no living witness or direct testimony as to the
manner in which his death occurred. Under such cir-
cumstances, for want of better evidence, the natural
caution and instinct of self-preservation which lead the
normal and sane human being to avoid injury and death
are recognized by this and many other courts as afford-
ing ground for the presumption or inference that the
deceased did not negligently expose himself to the in-
jury which he suffered, unless there be proof of other
facts and circumstances which negative such conclu-
sion."

In the case of *T. & P. Ry. Co. v. Gentry*, 163 U. S.
366, 16 Sup. Ct. 1108, 41 L. Ed. 186, these applicable
principles, which are followed by the quotation from
*Steed's Case, ante*, made by this court in *Crawford's
Case, ante*, are stated: "It is undoubtedly true, as
claimed by the defendant, that the deceased was under
a duty not to expose himself recklessly when about to
cross the track of a railroad. In *Railroad Co. v. Hous-
ton*, 95 U. S. 697, 702 [24 L. Ed. 542], this court, after
referring to certain acts of negligence upon the part
of a railroad company which were alleged to have caus-
ed personal injuries, said: 'Negligence of the com-
pany's employees in these particulars was no excuse for
negligence on her part. She was bound to listen and
to look before attempting to cross the railroad track,

in order to avoid an approaching train, and not to walk carelessly into the place of possible danger.' To the same effect are *Scholfield v. Chicago, Milwaukee & St. Paul Railway,* 114 U. S. 615, 618 [5 Sup. Ct. 1125, 29 L. Ed. 224], and *Aerkfetz v. Humphreys,* 145 U. S. 418 [12 Sup. Ct. 835, 36 L. Ed. 758]. But the present case did not admit of or require an instruction upon this special subject. There was no evidence upon which to rest such an instruction. As already stated, no one personally witnessed the crossing of the track by the deceased, nor the running of the flat car over him. Whether he did or did not stop, and look and listen for approaching trains, the jury could not tell from the evidence. The presumption is that he did; and, if the court had given the special instructions asked, it would have been necessary to accompany it with the statement that there was no evidence upon the point, and that the law presumed that the deceased did look and listen for coming trains before crossing the track." See, also, Central Law Journal, vol. 77, No. 18, p. 331.

No "eyewitness" to the intestate's injury was offered. According to the bill of exceptions (in which it is recited all the evidence is contained), the last time intestate was seen alive was when he was going towards (but at a distance from) this crossing, sometime before the engines passed over the crossing. There is an absolute, complete silence, in the evidence, as to what intestate did or did not do at or about the crossing whereat he was killed.

There is evidence to the effect that it was dark— "plum dark," "very dark," as some of the witnesses stated—when the engines passed over the crossing; that they were running with the tender to the front; and that there was no headlight or other light on the forward end of the engine. There was testimony by per-

sons, at other places than the crossing where intestate was killed, to the effect that they saw the engines from the light of the furnace. With one exception these persons viewed the engines from the side as they passed them. This exception was a witness who testified that he saw the engine (probably inflicting the injury) before, as, and after it passed the crossing where intestate was killed. It was dark, and the distance was several hundred yards. Such testimony could not authorize the trial court to conclude as a matter of law that the furnace light was or could be observed, or the bulk of the engine seen apart from the furnace light, by the exercise of ordinary prudence, by a person toward whom the engine was coming.

So, whether, had intestate seasonably stopped and looked before attempting to cross or go upon the track, he would have seen the engine without forward light on it, running with tender in front, on a "very dark" night—as the jury might have found by crediting the witness so testifying—was a jury question. That a finding in the affirmative might be reached, inference alone must be relied on; and where the drawal of inferences, from evidence, is the jury's province, the courts cannot do so, as was expressly ruled in *L. & N. R. R. Co. v. Webb*, quoted ante. The only other basis for an assertion that ordinary prudence would have warned intestate so that he might have avoided the danger—might have rendered himself free from contributory negligence—is that of the noise of the engine. It could not be affirmed as a matter of law that an engine without forward light on it, and when it was "'good dark,' cannot be run upon a normal adult without his becoming aware of its approach in time for him to avoid collision therewith.

The witness Whaley testified that: "The train attracted my attention, or I noticed the train about 300 yards away. It was making considerable noise on the exhaust, and was running very fast." But the witness Will Coleman testified to an effect that the jury might well have concluded was in contradiction of the witness Whaley. He said: "The first engine that went up and came back stopped at West Pratt. I heard it come up and stop, and we noticed it. *I don't think it was exhausting as it came up there.*" (Italics supplied.) But even if the testimony tending to show that others, differently situated from the man at or about the crossing, heard the running engines before they arrived at the crossing, or saw the furnace light from the engines as they passed these persons, was accepted as conclusive, still it was for the jury to draw the inference that intestate also saw and knew these facts and disregarded the dictates of prudence.

For the error in giving the affirmative charge, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON, SOMERVILLE, and DE GRAFFENRIED, JJ., concur. MAYFIELD, J., not sitting. SAYRE, J., dissents.