(137 So. 409)

**DAY & SACHS v. TRAVELERS' INS. CO.**

6 ·Div. 816.

Supreme Court of Alabama.

Oct. 8, 1931.

Rehearing Denied Nov. 19, 1931.

Barber & Blake, of Birmingham, for appellee.

Nesbit & Sadler, of Birmingham, for appellants.

GARDNER, J.

One Hubbard was a laborer in the employ of the Buchanan Construction Company, a subcontractor under Day & Sachs, who were the general contractors for the erection of the commerce building at the State University. While engaged in the line of his work on the third floor of the building in course of construction, and on the southeast corner of the top of the building, a number of bar joists collapsed, causing Hubbard to fall to his death. Both Day and Sachs, the general contractors, and the Buchanan Construction Company were operating under the Workmen's Compensation Statute, and the appellee, Travelers' Insurance Company, was the insurance carrier for said Buchanan Construction Company. Said carrier paid to the dependents of said Hubbard compensation due them, and instituted this suit against Day & Sachs for reimbursement therefor, upon the theory that it was their negligence

which constituted the proximate cause of Hubbard's death.

The right of subrogation is recognized in section 7586, Code 1923, and that the suit was properly brought in accordance with this statutory provision is not here questioned. Rasmussen v. George Benz & Sons, 168 Minn. 319, 210 N. W. 75, 212 N. W. 20.

Upon the trial of the cause, there was verdict for the plaintiff, and recovery had for the sum sufficient for reimbursement, with attorneys' fee added as provided by the above-noted statute, and from this judgment defendants appeal.

Upon the merits of the case, defendants insist they were entitled to the affirmative charge upon the theory that Hubbard was an employee of an independent contractor, to whom they owed no duty to be watchful of his safety, there being no inherent danger in the premises existing when the subcontractor proceeded with the work, citing among other authorities Connors-Weyman Steel Co. v. Kilgore, 189 Ala. 643, 66 So. 609, 612, and U. S. C. I. Co. v. Fuller, 212 Ala. 177, 102 So. 25.

But we think there is a point of differentiation on the facts as here presented and those in the above-noted authorities, which is of controlling importance. True the construction company employing Hubbard was an independent contractor to place the stone on the building, and no proof to show the place of work was inherently dangerous. It became necessary for this company, on account of its crane being unable to reach the stone on one end of the building, to lift it to one part, and truck it over to the other where it was to be placed. We recognize further that this was no part of Day & Sachs' business, but a matter that primarily concerned the construction company. The plankway for this trucking of heavy stone was over some bar joists that defendants had erected, and while defendants may not have originally intended their use for support of such plank way for trucking the stone, yet it appears that they were so used with the knowledge, acquiescence, and consent of Munsell, defendants' general superintendent on that job. While we have said the placing of the stone was primarily the business of the subcontractor, yet plaintiff's proof shows that in fact all work done by the subcontractor was to be under the direct supervision and control of Munsell, defendants' superintendent, and this was so agreed and understood in conversation with defendant Day, of the firm of Day & Sachs.

It was further agreed that in case of need, laborers of Day & Sachs should assist, the construction company, however, being charged for their time, and, in fact, when the fatal accident occurred, a helper for the subcontractor was one of defendants' men, and the evidence goes further and shows that Munsell had authority to discharge any of the men employed on the job by Buchanan Construction Company; the witness Buchanan testifying: "Mr. Munsell * * * had authority to hire any man that was working on that job, and to fire any man that was working on that job, as far as my men were concerned. My man, Mr. Faucett (who looked after the stone work, we may add) was supposed to work and do the work under the orders of Mr. Munsell—at times when the stone was being raised— * * * when he was handling the stone on the building he was under the direct supervision of Mr. Munsell."

■ Plaintiff's evidence was to the effect that the bar joists were not properly fastened, and were therefore unsteady and likely to fall. Defendants' evidence was to the contrary, and that they were properly fastened, all of which presented a jury question. The proof for plaintiff is further that the unsteady condition of these bar joists was noticed prior to the accident and while the stone was being trucked across and over them, and that Munsell's attention was directed to the situation, and he was warned that it was dangerous. The witness Hughes, Buchanan's foreman of the steel work, testifies that he first warned Faucett, who with helpers was placing the stone, of the danger, and that Faucett went down to see Munsell, and all three came back to look over the situation. Hughes told Munsell he thought it was unsafe to "truck across there," but Munsell did not agree. To quote the witness: "So he took the truck and placed a bar joist as he thought it was all right, * * * and he took those trucks and put some plank across like that (indicating) for them to roll the truck on to carry the stone across. He told the darkies to get the stone partly on the girders and partly on the bar joists, he was going to set them partly on those girders so that the weight wouldn't be out here (indicating) * * * he laid down the board like that, and made it come under so that the truck coming across wouldn't hit the end of it." His further testimony tends to show that the men then proceeded "putting stone back up," and that Munsell went down to where the crane was, and immediately another stone was sent up, and then another, which were put on the truck, and "started across this runway," and when they had been carried about fifteen feet from the wall the bar joists turned over and "the whole thing went in a hole." There is evidence also to the effect that if the bar joists had been properly fastened they would not have turned, and the accident would not have occurred.

Much of the evidence is in conflict, and we merely outline the tendencies thereof for the plaintiff, as this suffices for the purposes here in hand.

Appellants' counsel insist that what Munsell did was but a gratuitous humanitarian effort on his part for which defendants are not to be held responsible. But we think this insistence overlooks the proof as to Munsell's full power and authority, and the evidence tending to show that defendants so understood that he should have complete control and supervision, and that all workers, including those of Buchanan Construction Company, were to take their orders from Munsell.

The defendants, as general contractors, had full charge and control of the building, and, so far as any question here concerned, occupied the same position as the owner thereof. Speaking of the duties of an owner of a mine when placing a contractor in possession, the Michigan court in Samuelson v. Cleveland Iron Mining Co., 49 Mich. 164, 13 N. W. 499, 503, 43 Am. Rep. 456, points out that if there is nothing in the contract calculated to bring about danger to-others, he will not be concerned with the consequences as to third persons, adding, however, the following, which is here pertinent: "But if, on the other hand, he retains charge and control, and gives workmen a right to understand that he is caring for their safety and that they may rely upon him to guard against negligent conduct in the contractors and others, his moral accountability for their safety is as broad as it would be if he were working the mine in person; and his legal accountability ought to be commensurate with it."

And this court in Connors-Weyman Steel Co. v. Kilgore, supra, cited this authority approvingly, and recognized the principle stated, giving it application, as indicated in the following language: "It remains to consider whether there was any evidence tending to show that defendant did in fact undertake to make and keep the operation of the mine, or any part of it, safe for Sicard's employees, with their knowledge of and reliance upon such an undertaking."

What has been here said as to the evidence is sufficient to indicate that defendants retained full control of all the work and all the employees, with authority to discharge, and with directions they should heed the instructions of Munsell, defendants' superintendent, and Munsell's own conduct, just preceding the accident, indicated to the employees that he was looking after their safety and that they had a right to rely upon such undertaking on his part. Under the facts as here disclosed, therefore, the principle above noted is to be given application, and a jury question was presented. The affirmative charge was therefore properly refused.

So likewise, in view of the evidence as herein indicated, charges 12, 13, 20, and 17, requested by defendants, were either misleading or erroneous, and there was no error in their refusal.

Appellants insist there was reversible error in the rulings on demurrer to the counts of the complaint. We think count 5 was clearly not subject to any assignment of demurrer interposed thereto. Sloss Iron & Steel Co. v. Tilson, 141 Ala. 152, 37 So. 427. It appears that this count stated in more detail the wrongful conduct of which plaintiff complains, which was stated in more general language in the other counts.

The entire evidence is devoted to one single charge of wrongful conduct, that stated in count 5, of allowing or causing the southeast corner of the building, or a portion thereof, to fall and give way, and there was no pretense of any other right of recovery. If it be conceded that some of these counts were technically defective and subject to criticism, yet, as it so clearly appears the ruling thereon could in no manner have prejudicially affected any rights of defendants, the error, if any, in ruling thereon was without injury and would present no cause of reversal. Shannon v. Lee, 178 Ala. 463, 60 So. 99; Supreme Court Rule 45.

Count 6 under the authority of Western Rwy. v. Turrentine, 197 Ala. 603, 73 So. 40, must be construed as one for simple negligence only, and as such but alleged the same proximate cause of the injury as count 5. Nor was there any recovery except by way of compensation only, reimbursement to plaintiff, and no question of injury to defendants by way of any supposed wanton charge appears.

Other questions presented have been examined, but require no separate treatment. They clearly present no error to reverse.

No reversible error appearing, the judgment will be affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.