88 So.2d 825

### FOSTER & CREIGHTON COMPANY
### v.
### ST. PAUL MERCURY INDEMNITY COMPANY.

6 Div. 567.

Supreme Court of Alabama.

June 30, 1956.

Spain, Gillon & Young and John P. Ansley, Birmingham, for appellant.

Taylor, Higgins, Windham & Perdue and Lange, Simpson, Robinson & Somerville, Birmingham, for appellee.

584

ing in the third floor of the Phoenix Building Annex on July 27, 1950, due to the negligence of Foster & Creighton Company, a corporation, and the other defendants.

Pleading was in short by consent. Defendants pleaded the general issue, contributory negligence, assumption of risk, incurred risk of the deceased, and contributory negligence of the subcontractor, Shook & Fletcher Supply Company. The case was tried before a jury and a verdict rendered in favor of the appellees and against the defendant, Foster & Creighton Company, in the amount of $28,000.

Motion for a new trial was duly filed and was overruled. This appeal was perfected on March 27, 1953.

Appellant assigns as error, among others, the trial court's refusal to give the affirmative charge on behalf of the defendant. Appellant contends that the hole through which Robinson fell was an open and obvious danger which was well known to Robinson, whereas the duty which the appellant, Foster & Creighton Company owed to take was reasonable measures to prevent his injury due to a hidden danger only.

Appellees contend that the appellant was negligent in not erecting a barrier around the hole or providing a cover over the hole, and that the case was properly submitted to the jury on the issue of contributory negligence.

At the time of his death, Robinson was journeyman sheet metal worker and had been employed by Shook & Fletcher on the Phoenix Building job from six to eight weeks. During that time, he worked installing air conditioning ducts on the first, second and third floors, with most of the work being done in the northwest corner of those floors.

At the time he fell, Robinson was moving in a backward manner while he and two other men maneuvered a 12 or 14 foot length of duct into a position to be pushed up through one of the small holes to the fourth floor.

PER CURIAM.

This suit was filed by St. Paul Mercury Indemnity Company for its benefit and for the benefit of Mrs. June Fulton Robinson and her minor son, dependents of Robert Harold Robinson, Sr., deceased, against Foster & Creighton Company and others, under the provisions of the Workmen's Compensation Act, Title 26, § 312, Code of Alabama 1940, as amended. The complaint was in one count and alleged that Robert Harold Robinson, Sr., died as the result of injuries sustained in a fall through an open-

On original submission, this cause was assigned to Livingston, C. J., who prepared an opinion holding, in effect, that the plaintiff's evidence was insufficient to take the case to the jury. Upon consideration by the full court, Justices Lawson, Simpson, Stakely, Goodwyn, Merrill and Spann were of the opinion that the evidence did make a case for the jury. It is, therefore, necessary to state the evidence in its most favorable light to the plaintiff-appellee. This we have done by taking appellee's statement of the facts contained in brief, and which is fully supported by the record. For a better understanding, we reproduce here a rough sketch not drawn to scale, showing the opening in the third floor of the Phoenix Building Annex. The opening designated "2" is the hole through which Robinson fell.

"It is undisputed that the appellant, Foster & Creighton Company, as contractor, entered into an agreement with the Phoenix Building Corporation, as owner, on December 27, 1949, under the terms of which appellant was to erect an addition to the then existing Phoenix Building, located at Second Avenue and 17th Street, North, in Birmingham, Alabama. The agreement contained the following pertinent provisions:

"'The Contractor, being fully responsible for the general management of the building operation, shall have full directing authority over the execution of the Sub-Contracts, and shall pay the cost of all approved Sub-Con-

tracts, for reimbursement under Article 5 hereof.

" 'The Sub-Contractors shall not only cooperate with each other, as provided in Article 35 of the General Conditions of the Contract, but they shall conform to all directions of the Contractor in regard to the progress of the work.'

"Also made a part of the contract were certain 'General Conditions of the Contract.' Article 12 thereof provided, in part, as follows:

" 'The Contractor shall take all necessary precautions for the safety of employees on the work, and shall comply with all applicable provisions of Federal, State, and Municipal safety laws and building codes to prevent accidents or injury to persons on, about or adjacent to the premises where the work is being performed. He shall erect and properly maintain at all times, as required by the conditions and progress of the work, all necessary safeguards for the protection of workmen and the public and shall post danger signs warning against the hazards created by such features of construction as protruding nails, hod hoists, well holes, elevator hatchways, scaffolding, window openings, stairways and falling materials; and he shall designate a responsible member of his organization on the work whose duty shall be the prevention of accidents. The name and position of the person so designated shall be reported to the Architect by the Contractor.'

"The Shook & Fletcher Supply Company—the employer of Mr. Robinson—had a subcontract with appellant to install the air conditioning and heating system in the annex.

"The evidence is without dispute that Mr. Robinson, the deceased, was an employee of the subcontractor, Shook & Fletcher Supply Company, and was engaged in the performance of the duties of his employ-

ment at the time he was injured. It was stipulated by the parties that Mr. Robinson died as a result of the fall which he received on the occasion in question, and the death certificate was also received in evidence.

"The evidence was likewise without dispute that one J. B. Smith was Superintendent for appellant on the job, and was in charge of the whole job. He had a copy of the contract with the owner there on the job, and was familiar with its provisions giving the contractor full directing authority over the execution of subcontracts. It is further clear from the evidence adduced by appellant in the court below that appellant's superintendent exercised this authority with respect to the performance by Shook & Fletcher of its subcontract. When Shook & Fletcher first came upon the job, they started work on the first floor of the building. Their men worked on that floor a short time. But Smith stopped them from working on the first floor and directed them to work on the second, third, fourth, fifth, and then the first floor, in that order.. Shook & Fletcher's men complied with .these directions given by appellant's superintendent.

"The evidence further disclosed that appellant entered upon the performance of its duty to provide for the safety of workmen on the job. Without dispute, appellant provided a cover for the opening on the second floor, but the evidence on behalf of appellees was that this cover on the second floor had remained there about a week, and that no cover had been on the second floor for about two weeks, or longer, prior to the accident.

"The single witness for appellant testified that a cover had also been put on the opening at the third floor; but the evidence on behalf of appellees was to the effect that there never was a covering provided for the opening at the third floor. Every witness to the accident testified positively that at the time of the accident there was no cover, barricade or fence around the opening at the third floor. Appellant's wit-

ness Smith admitted on cross-examination that when he made an examination of the opening after Mr. Robinson had fallen, he found no covers on it from the third floor down. He did not know how long the opening had been without covers prior to the accident. It was possible for it to have been open for a week without him knowing about it, although he was on all floors of the building every day.

"The evidence on behalf of appellees also showed that shortly before the accident— according to one witness about twenty or thirty minutes before the accident occurred—a carpenter had come up to the opening at the third floor, with tools and materials, to build a railing around the opening, but he had been called away by the foreman before the railing was built. The evidence by appellant's witness disclosed that any person making covers or rails to go around the holes would be people working for appellant. The evidence further showed that the employees of Shook & Fletcher on that job talked about the carpenter going to build the barricade there.

"It is undisputed that in construction jobs of this character it is customary to have guardrails or covers around or over openings of the type through which Mr. Robinson fell. The appellees' witnesses Bridges, Coggins, Hagood and Mason, and the appellant's witness Smith so testified, including the fact that such was good safety practice.

"The evidence was without conflict that at the time Mr. Robinson suffered the fall he and two other employees of Shook & Fletcher (Coggins and McDowell) were engaged in moving a section of duct from a point on the third floor approximately 20 to 25 feet from the opening through which Mr. Robinson fell to a point approximately 6 feet from the opening. Immediately prior to this movement, three of the Shook & Fletcher employees (Bridges, Coggins and Robinson) had been putting the section together. Bridges had then gone to a scaffold to guide the section through the hole it was to go in. Robinson, Coggins and McDowell were handling the section. The section of duct was about 12 or 13 feet long, approximately 18 by 30 inches in width and depth. This section also had an elbow at one end. This elbow was approximately 12 by 16 inches, and about 6 inches long. This section of duct was to be attached to another section of riser duct which had already been installed and extended up from the second floor to a height of about 18 inches above the level of the third floor. This duct was one of three riser ducts which were fitted into small holes to the east of the opening through which Mr. Robinson fell. Ducts had already been installed in each of these three holes and were protruding to a height of about 18 inches above the level of the third floor. In addition to these three protruding ducts, there were some electric conduits with boxes on the end installed between the holes marked 3 and 4 on the diagram. These electric conduits were of pipe about three-quarters inch in diameter.

"In moving the section of duct, Mr. Robinson was the 'lead man,' and told the others how to handle the duct. Mr. Robinson had hold of the end of the duct which had the elbow on it—west end—Coggins was at the other (east) end, and McDowell had hold of the end of the elbow. This section was to be placed on the riser duct extending through hole No. 1 on the diagram In order to reach this position, the duct was carried between the two holes marked 3 and 4 on the diagram. It was necessary to manipulate the duct in order to pass it between these two ducts and be raised into position to be handed to Mr. Bridges on the scaffold. Mr. Robinson traveled in a backing position. As Mr. Coggins got near the No. 4 duct protruding up out of the floor, Mr. Robinson warned Mr. Coggins to watch out for the duct and not to step in it. As the duct being carried passed between the ducts in holes 3 and 4, there was not enough room to permit McDowell and the duct to go through at the same time, so Mr. Robinson told McDowell to let go. McDowell did let go, and as Mr. Robinson was trying

to maneuver the duct past a conduit, Mr. Robinson fell through opening No. 2 (on the diagram). No one shoved the duct, or did anything like that, before Mr. Robinson fell. At the time Mr. Robinson fell, he was trying to maneuver the duct around the conduit.

"The witnesses for appellees testified that at the time Mr. Robinson fell through opening No. 2, there were no pipe, or conduit or ducts in opening No. 2. Appellant's witness Smith testified that there was one duct in opening No. 2 at the time of the accident.

"The appellant's witness Smith testified that after the accident to Mr. Robinson, the appellant's carpenter foreman covered up the opening Mr. Robinson fell through.

"Appellant's witness Smith also testified that he was the person responsible for preventing accidents on the job, and he knew that the appellant was to take all safety precautions on the job.

"The evidence on behalf of appellees was that the employees of Shook & Fletcher were not using opening No. 2 for the purpose of passing materials up to the third floor. Materials for the third floor were brought in through windows. The opening had been used to get materials to the second floor, but the cover was put back on each time. But the cover for opening No. 2 at the second floor had been off for at least two or three weeks prior to the accident."

Appellant's assignments of error 5, 9, 10 and 11 are founded upon the refusal of the affirmative charge based on the evidence, or on the contributory negligence of the deceased.

Appellant concedes in brief "that Robinson at the time of the accident, was an invitee on the premises and as such, was owed a duty consonant with that status." Appellant urges that it was entitled to the affirmative charge upon the theory that Robinson was an employee of an independent contractor, to whom they owed no duty to be watchful of his safety, there being no inherent danger in the premises existing when the subcontractor proceeded with the work, citing among other authorities, Connors-Weyman Steel Co. v. Kilgore, 189 Ala. 643, 66 So. 609, and United States Cast Iron Pipe & Foundry Co. v. Fuller, 212 Ala. 177, 102 So. 25.

Appellees contend that the instant case is governed by the rule of Day & Sachs v. Travelers' Insurance Co., 223 Ala. 558, 137 So. 409, 412, where the same situation existed and the same question arose as in the instant case. There, the court held that the conduct of the defendant's superintendent indicated to the employees of the subcontractor that he was looking after their safety and that they had a right to rely upon such undertaking on his part, and quoting from the Connors-Weyman Steel Co. case, the court said: " 'It remains to consider whether there was any evidence tending to show that defendant did in fact undertake to make and keep the operation of the mine, or any part of it, safe for Sicard's employees, with their knowledge of and reliance upon such an undertaking' ", and held further that a jury question was presented and "the affirmative charge was therefore properly refused."

█ In the instant case, the following evidence or tendencies therefrom were sufficient to make the question of appellant's liability a question for the jury:

1. By contract, appellant had full directing authority over Shook & Fletcher, agreed to take all necessary safety precautions, and their general superintendent was the man charged with this responsibility.

2. After the employees of Shook & Fletcher had come on the premises to work, Foster & Creighton had covered the holes both on the second and third floors.

3. Appellant's general superintendent testified that it was customary and good safety and building practice to keep such holes barricaded or covered.

4. On the morning the accident happened, appellant's carpenter came to the

third floor with materials to put a guard-rail around hole No. 2, and this fact was known to the employees of Shook & Fletcher.

We think these facts are sufficient to bring the instant case within the rule of the Day & Sachs case and therefore presented a jury question as to the initial negligence of appellant.

But appellant contends that the No. 2 opening through which Robinson fell was open and obvious, and therefore Robinson was guilty of contributory negligence as a matter of law in working in close proximity to the opening.

■ The three elements essential to contributory negligence in cases of this kind are that the party charged with contributory negligence not only (1) had knowledge of the condition or failure, yet (2) appreciated the danger under the surrounding conditions and circumstances and did not (3) exercise reasonable care in the premises, but with such knowledge and appreciation, put himself into the way of danger. Mackintosh Co. v. Wells, 218 Ala. 260, 118 So. 276. In Walker County v. Davis, 221 Ala. 195, 128 So. 144, 147, the court said:

"It is often said that from the fact that plaintiff had knowledge of the physical condition, it does not necessarily follow that he appreciated the danger, and that there must either be an appreciation of the danger, or an opportunity to do so and negligence in that respect. 20 R.C.L. 110, 111. It is sometimes said that the appreciation of the danger may be actual or imputed. 45 C.J. 946. And the negligence may consist in the failure to appreciate the danger when there is opportunity and knowledge sufficient to stimulate reasonable care in that respect. Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 So. 979; 45 C.J. 947. Mere knowledge of the defect is not sufficient as a matter of law. There must also be the element of want of due care. 20 R.C.L. 111; [City of] Birmingham v. Gordon,

167 Ala. 334, 52 So. 430; [City of] Montgomery v. Ross, supra." [195 Ala. 362, 70 So. 634]

See Byars v. Alabama Power Co., 233 Ala. 533, 172 So. 621; Pankey v. City of Mobile, 250 Ala. 566, 35 So.2d 497.

■ There is no evidence that the deceased was guilty of contributory negligence; such a conclusion could only be based on inferences from the evidence. Where a finding of contributory negligence must be based upon inferences alone, it is the province of the jury and not of the court to draw such inferences and "'the general charge should not be given.'" Ledbetter v. St. Louis & S. F. Ry. Co., 184 Ala. 457, 63 So. 987, 988; Birmingham Southern R. Co. v. Harrison, 203 Ala. 284, 82 So. 534.

The case of West v. Thomas, 97 Ala. 622, 11 So. 768, is analogous both as to facts and as to the question of contributory negligence.

A case very similar factually to the instant case is Ziraldo v. W. J. Lynch Co., 365 Ill. 197, 6 N.E.2d 125, 127. There the shaft was open and obvious and adjacent to the one in which plaintiff was depositing a grinding machine. "The gates [to the elevator shafts] were open most of the time. If the east gate had been closed, the accident could not have happened." The court said in part:

"Whether a plaintiff was guilty of contributory negligence is ordinarily a question of fact for the jury to decide under proper instructions. It becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. Thomas v. Buchanan, 357 Ill. 270, 192 N.E. 215; Mueller v. Phelps, 252 Ill. 630, 97 N.E. 228; O'Rourke v. Sproul, 241 Ill. 576, 89 N.E. 663. A motion to direct a verdict for the defendant preserves for review only a question of

law whether from the evidence in favor of the plaintiff, standing alone and when considered to be true, together with the inferences which may legitimately be drawn therefrom, the jury might reasonably have found for the plaintiff. Brophy v. Illinois Steel Co., 242 Ill. 55, 89 N.E. 684; City of Chicago v. Jarvis, 226 Ill. 614, 80 N.E. 1079. We cannot weigh the evidence to determine, as a matter of fact, whether the plaintiff was guilty of contributory negligence (Dukeman v. Cleveland, Cincinnati, Chicago & St. Louis Railway Co., 237 Ill. 104, 86 N.E. 712) and we cannot reject testimony as improbable unless it is contrary to some natural law (Zetsche v. Chicago, Peoria & St. Louis Railway Co., 238 Ill. 240, 87 N.E. 412).

\* \* \* \* \* \*

"It remains to be considered whether .or not the plaintiff was under any duty to inform himself of and guard against the conditions existing in the east shaft. One engaged in the construction of a building owes to another not in his employ, engaged in the same work and exercising due care for his own safety, the duty of using reasonable care to avoid injuring him. Defendant should have used such care to keep the elevator closed. Ziraldo was not bound to anticipate danger and negligent conditions on the part of defendant or his employees. O'Rourke v. Sproul, supra. His failure to look at the east elevator was not contributory negligence per se. He had a right to presume that he was not exposed to danger which could come to him only from a breach of duty by the defendant. Dukeman v. Cleveland, Cincinnati, Chicago & St. Louis Railway Co., supra; 45 Corpus Juris, Negligence, § 512; Lawrence v. Bartling & Dull Co., 255 Mich. 580, 238 N.W. 180; Crawford v. Kansas City Stock Yards Co., 215 Mo. 394, 114 S.W. 1057.

"Under the facts proved, the question of contributory negligence was purely one of fact for the jury to determine. The superior court correctly submitted that issue to it."

We think the question of Robinson's contributory negligence was a jury question, and the trial court correctly refused the requested affirmative charges.

■ Appellant argues that Shook & Fletcher had the same duty toward the deceased as did Foster & Creighton, and that if Foster & Creighton was negligent, Shook & Fletcher was necessarily negligent also, and one who stands in the shoes of Shook & Fletcher cannot recover from Foster & Creighton for this negligence. Appellant requested a charge which would instruct the jury on this point. Assuming, without deciding, that this is a correct proposition of law, we must hold that appellant's argument is without merit because Foster & Creighton's liability arose out of its assumption of the duty to cover the hole through which Robinson fell, and there is no evidence in the record to indicate that Shook & Fletcher assumed a similar duty.

■ Charge No. 25 requested by defendant was to the effect that if Robinson knew of the unsafe condition of the premises at the point and time where the accident occurred, plaintiff would not be entitled to a verdict against the defendant. Under defendant's theories of the case, there must exist not only knowledge of the dangerous condition but also appreciation of the danger and want of due care. Robinson Mining Co. v. Swiney, 206 Ala. 617, 91 So. 476; Walker County v. Davis, 221 Ala. 195, 128 So. 144; Pankey v. City of Mobile, 250 Ala. 566, 35 So.2d 497. Therefore, it was not error to refuse to give the charge.

■ The propositions of law contained in each of the other requested charges, the refusal of which is assigned as error, were covered either by the court's oral charge to the jury or by other charges given at

the request of the defendant. Under these circumstances, it was not error to refuse to give the charges. Lindsey v. Barton, 260 Ala. 419, 70 So.2d 633; Atlantic Coast Line R. Co. v. French, 261 Ala. 306, 74 So. 2d 266; City of Bessemer v. Clowdus, 261 Ala. 388, 74 So.2d 259.

■ Appellant assigns as error and argues together the court's rulings on three defense objections to arguments by plaintiffs' counsel and the court's overruling of defendant's motion for a mistrial based on part of the opening argument made by plaintiffs' counsel. One of the statements to which defendant objected was as follows:

"But any excess over and above their interest, whatever it is, without mentioning any amount, any excess in the suit is being brought for the benefit of this lady, Mrs. Robinson."

This statement is a correct statement of the law under which this suit was brought and is well within the limits of permitted argument as set out in the cases: Wilkey v. State ex rel. Smith, 238 Ala. 595, 192 So. 588, 129 A.L.R. 549; Atlanta Life Insurance Co. v. Ash, 228 Ala. 184, 153 So. 261; Birmingham News Co. v. Payne, 230 Ala. 524, 162 So. 116; Prudential Ins. Co. v. Calvin, 227 Ala. 146, 148 So. 837.

■ Appellant assigns as error the court's action in overruling defendant's objection to the following question propounded to the widow of the deceased:

"Mrs. Robinson, are you now receiving compensation payments from the St. Paul Mercury Indemnity Company?"

The evidence sought to be adduced by this question was admissible to prove a necessary allegation of the complaint. Under the statute which conferred a right of action on plaintiff, it is necessary that the employer or the insurance carrier shall have paid compensation to the injured employee or his dependents. Where a party claims a right conferred by statute, he must allege and prove facts which bring him within the provisions of the statute. Jefferson County v. Gulf Refining Co. of Louisiana, 202 Ala. 510, 80 So. 798; Alabama Great Southern Ry. Co. v. Cardwell, 171 Ala. 274, 55 So. 185. It was necessary for plaintiff to introduce this evidence to prove the allegation that plaintiff had paid or was then paying workmen's compensation to Robinson's dependents. Appellant cites Coleman v. Hamilton Storage Co., 235 Ala. 553, 180 So. 553, as authority for his argument that such evidence is not admissible. It is true that this court held in that case that evidence of payment under the Workmen's Compensation Act was inadmissible, but that case is not controlling here because in that case, the evidence was offered by the defendant in an attempt to defeat plaintiff's recovery. The court said that liability of the employer or his insurance carrier is in no sense a defense against liability of a third person either as to the right of recovery or the quantum of recovery. In the case at bar, the evidence was introduced, not in defense, but to prove a material allegation of the complaint. We will not consider the other assignments of error which deal with similar questions and which are argued in bulk with this one.

■ If there was any error in the court's overruling of defendant's objections to questions propounded to plaintiffs' witness Hagood concerning the usual practice in regard to covering or fencing holes in buildings under construction it would not be such error as would cause a reversal. Under our practice, prejudicial error may not be predicated upon the admission of evidence where substantially the same evidence had been admitted previously without objection or motion to exclude. Lindsey v. Barton, supra; Louisville & Nashville R. Co. v. Young, 168 Ala. 551, 53 So. 213; New Connellsville Coal & Coke Co. v. Kilgore, 162 Ala. 642, 50 So. 205. That is the case here. Witnesses who testified prior to Hagood had been permitted, without objection, to give the same testimony as that objected to at this point.

**592**

During the course of argument by plaintiffs' counsel at the close of the evidence, the following proceedings occurred:

"Mr. Foster: May it please the Court, we again move for a mistrial and predicate it on matters that perhaps would be better stated if the jury would be excluded before I state them.

"The Court: Gentlemen, you will retire to the jury room. (Thereupon at 11:00 A.M., the jury retired from the court room and the following occurred in the presence of the court and parties and counsel.)

"Mr. Foster: We predicate our motion for a mistrial on the fact that during Mr. Windham's argument, and I am referring to those arguments calculated to appeal to the sympathy of the jury, that sitting at the *tale* was the little boy rolling his toy back and forth across the table, and he said to his mother—I heard it and I don't know that the court heard it, but the little boy stated to his mother—and I don't criticize the little boy, but he said to his mother, 'Don't cry,' and I am sure the jury could hear it. I hate to mention this, but I think in fairness—

"Mr. Windham: I might say this to the Court, that I was talking at the time, but I was between Mrs. Robinson and the jury and I didn't hear what he said.

"The Court: Of course, gentlemen, I suppose it goes without saying that as far as the court is concerned, I'm extremely desirous of all the parties being protected in their rights, but I do feel like the parties to this action, the ones to be benefitted should be allowed to be present at the counsel table at the time of the trial and inside the rail.

"I will overrule your motion for a mistrial.

"Mr. Foster: Did you notice that Mrs. Robinson was crying?

"The Court: Yes, sir.

"Mr. Foster: I don't think I have made any intimation that she has not conducted herself properly as a person may with perfect propriety yield to their feelings, but if they do and under the circumstances, it prevents a fair trial, then I think,—

"The Court: I understand counsel, and I don't blame you for making the motion, but I have ruled against you.

"Mr. Foster: We want the record to show that toys were on the table and the little boy was playing with the toys on the table, and I will ask Your Honor whether or not you noticed that?

"The Court: Yes, I have noticed that.

"Mr. Foster: I wanted that for the purpose of the record. Did you notice Mrs. Robinson crying?

"The Court: I had noticed that.

"Mr. Perdue: I want to state for the sake of the record that I was sitting there closer to the jury than Mr. Foster, and I haven't heard a remark of that type and kind and I am sure the jury couldn't have heard it if I didn't hear it, and my hearing is good.

"Mr. Clark: Would it be in order for the record to show that the child is sitting nearer the jury than his mother, and to talk to his mother he would have to turn away from the jury or turn toward Mr. Foster, rather than toward the jury.

"The Court: I might say this, the court hasn't been aware of any conduct or activity on the part of anyone at the counsel table, including Mrs. Robinson and the child or attorneys, that would be prejudicial, in the Court's opinion. That is my idea about it, and I will overrule the motion for a mistrial.

"Mr. Foster: We except."

█ Under the controlling decisions in this state, we cannot hold the trial court in error for overruling the motion for a mistrial. These cases adhere to the principle that the trial judge is vested with a wide discretion in determining whether or not an incident such as this affects the rights of either party to have a fair trial, and his action may not be reviewed unless it clearly appears that his discretion has been abused. The cases also recognize that the trial judge is in a better position than this court to determine the probable effect of such incidents. Ingalls v. Holleman, 244 Ala. 188, 12 So.2d 751; Smith v. State, 37 Ala.App. 116, 64 So.2d 620, certiorari denied 258 Ala. 647, 64 So.2d 622; Swindle v. State, 27 Ala. App. 549, 176 So. 372, certiorari denied 234 Ala. 621, 176 So. 375. From the record before us, it does not appear that there was any abuse of discretion on the part of the trial judge.

█ Following the well-known rule announced in Cobb v. Malone, 92 Ala. 630, 9 So. 738, we will not disturb the trial court's ruling in defendant's motion for new trial on the ground that the verdict is contrary to the weight of the evidence, and following the rule as stated in Alabama Great Southern Railroad Co. v. Baum, 249 Ala. 442, 31 So.2d 366, and cases cited therein, we will not disturb his ruling on that motion on the ground that the verdict is excessive.

Affirmed.

LAWSON, SIMPSON, STAKELY, GOODWYN, MERRILL and SPANN, JJ., concur.

LIVINGSTON, Chief Justice (dissenting).

It is also undisputed that Mr. Robinson was an employee of Shook & Fletcher Supply Company. This company had a subcontract with the Foster & Creighton Company to supply and install air conditioning and heating systems in the new building, for which purpose the contractor poured concrete floors into the addition, and in the process formed four holes in the northwest corners of the second, third and fourth floors. All of these floors were identical. Three of these holes on each floor were about 18 by 30 inches each, and the fourth, which was 5 or 6 feet away from these, had dimensions which were variously estimated at 4 by 6 feet, 7 by 8 feet, and 6 by 10 feet. The holes on all the floors were aligned in such a manner that a straight line could be dropped from the top floor to the first floor through each of the holes. The three smaller holes on each floor were to carry air conditioning ducts, and the larger hole was to carry both air conditioning and heating ducts. Windows in the north wall afforded ample light to see the holes easily.

Mr. Robinson fell from the third floor through the large hole to the first floor. He died as a result of injuries received in this fall. It is also undisputed that shortly before Robinson fell he warned Coggins not to step or fall in opening No. 4.

Appellant concedes that at the time of the accident Robinson was an invitee on the premises and as such was owed a duty consonant with that status.

The controlling law on the question in this jurisdiction is stated in Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388, 391, in which Mr. Justice Knight, speaking for the court said:

"This court is firmly committed to the proposition that the occupant of premises is bound to use reasonable care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. Geis v. Tennessee Coal, Iron & R. R. Co., 143 Ala. 299, 39 So. 301.

"This rule, as was held in the case of Farmers' & Merchants' Warehouse Co.

v. Perry, supra [218 Ala. 223, 118 So. 406], also includes (a) the duty to warn an invitee of danger, of which he knows, or ought to know, and of which the invitee is ignorant; and (b) the duty to use reasonable care to have the premises to which he is invited in a reasonably safe condition for such contemplated uses, and within the contemplated invitation.

"In determining whether such care has been exercised, it is proper to consider the uses and purposes for which the property in question is primarily intended. 45 C.J. p. 829.

\*   \*   \*   \*   \*   \*

"In 45 C.J. § 244, p. 837, the rule is thus stated: 'The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.'"

The requirements for a case of contributory negligence are well set out in Mackintosh Co. v. Wells, 218 Ala. 260, 118 So. 276, 279, as follows:

"\* \* \* In contributory negligence, the essentials are that the party, against whom the plea is interposed, not only (1) had knowledge of the condition or failure, yet (2) appreciated the danger under the surrounding conditions and circumstances and did not (3) exercise reasonable care in the premises, but with such knowledge and appreciation put himself into the way of danger. Morgan v. Mobile & O. R. Co., 202 Ala.

461, 80 So. 845; Louisville & N. R. Co. v. Naugher, 203 Ala. 557, 560, 84 So. 262; Jones v. Ripley Stave Co., 203 Ala. 60, 82 So. 20; Labatt's Master and Servant, § 332. \* \* \*

\*   \*   \*   \*   \*   \*

"The instant plea was that of contributory negligence, and the mere knowledge of the offending instrumentality or condition does not constitute contributory negligence; there must have been an appreciation or consciousness of the danger that may result from the act or the failure thereof causing and resulting in the injury. Dobbins v. Western Union Tel. Co., 163 Ala. 222, 50 So. 919, 136 Am.St.Rep. 69; Elyton Land Co. v. Mingea, 89 Ala. 521, 7 So. 666; City Council of Montgomery v. Wright, 72 Ala. 411, 47 Am.Rep. 422; Osborne v. Alabama Steel & Wire Co., 135 Ala. 571, 33 So. 687."

These requirements are further explained in Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 So. 979, 983, in which the court said:

"\* \* \* Contributory negligence is not predicated solely on knowledge of the danger, and the certainty of injury to follow. If such were the rule, contributory negligence would be but a synonym for willful suicide or self-injury. If plaintiff had knowledge of facts sufficient to warn a man of ordinary sense and prudence of the danger to be encountered, and of the natural and probable consequences of his own conduct in the premises, then he was guilty of negligence if he failed to exercise ordinary care to discover and avoid the danger and the injury. 29 Cyc. 513, c; Id. 515, d; Sloss-Sheffield Steel & Iron Co. v. Reid, 191 Ala. 628, 68 So. 136."

The instant case is analogous to Long Construction Co. v. Fournier, 190 Okl. 361, 123 P.2d 689, 690. In that case, plaintiff was injured when he fell while inspecting plastering work being done by him as an independent contractor. Defendant was the

general contractor in charge of remodeling the building in which plaintiff was injured. The evidence showed that during the remodeling a celotex covering had been placed over a marble floor as protection. The celotex covering consisted of two pieces placed end to end over which wheelbarrows had moved, so as to cause the pieces to warp and overlap. In reversing a judgment for plaintiff, the court said:

"* * * There is no evidence that defendant knew the condition of the covering, but by the exercise of reasonable care it could have discovered the condition, but the defendant, while chargeable with knowledge of a condition involving the risk, should be credited with every reason to believe that plaintiff would discover the same condition and realize the risk involved.

"The plaintiff made frequent inspection trips to the premises; he knew or should have known of the floor covering and of the condition of it resulting from the moving over it of plastering material by men under his supervision. The plaintiff had like knowledge of the lighting equipment. He had been there two or three times a day. City of Edmond v. Washam, Adm'x, 1940 [190 Okl. 140] 121 P.2d 300; St. Louis-San Francisco Ry. Co. v. Gilbert, 185 Okl. 591, 95 P.2d 123, 126, held: 'The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not to the person injured that a recovery is permitted.'

"The general contractor is not an insurer of the safety of invitees; he is not required, at his peril, to keep the premises absolutely safe, but the measure of his duty in this respect is reasonable or ordinary care, and in determining whether such care has been exercised, it is proper to consider the uses and purposes for which the property in question is primarily intended. 45 C.J. 826."

In Neal v. Cities Service Oil Co., 306 Mich. 605, 11 N.W.2d 259, plaintiff was an invitee in a filling station operated by defendant. Plaintiff walked into a well-lighted restroom, in the floor of which was an open trap door. Plaintiff stopped and stood in one door of the restroom and did not see the open trap door as he walked past it. As plaintiff stepped back to let someone pass, he fell into the unprotected trap door opening. In reversing a judgment for plaintiff, the court said that ordinary prudence requires that a view be taken of the place where one is about to step, and held that where an adult possessed of all normal faculties walks into a small well-lighted room, past such a floor opening as this trap door, stands for five minutes near the edge of the opening, and then in a moment of carelessness steps backward into the opening, such person is not using the care that an ordinarily careful person would use under like circumstances, and is guilty of negligence as a matter of law.

In Connors-Weyman Steel Co. v. Kilgore, 189 Ala. 643, 66 So. 609, the court decided the case on other grounds, but stated that the inherently dangerous defect in the premises was as well known to the invitee as to the owner, and could furnish no basis for liability of the owner merely as an invitor.

In the recent case of Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412, the deceased, Jesse, was crushed while holding a ramp leading into a warehouse when a trailer-truck which he was directing in its movements hooked the ramp and pulled it against the building. Jesse was an employee of an independent contractor who had a contract to haul cotton seed from a cotton gin to the warehouse. He had been working at the warehouse for about six months. In an action by his administratrix against the warehouse owner in which the defendant was charged with negligence in failing to provide a safe place to work, this court

held that the affirmative charge should have been given at the request of the defendant. The court held that the danger being a known and obvious one, of which Jesse knew or should have known, defendant could assume that he would observe it and guard against it. The court reaffirmed the law as stated in Lamson & Sessions Bolt Co., supra, and that under the factual situation in the case, it was reversible error to refuse to give the affirmative charge for the defendant.

The appellee relies strongly on Day & Sachs v. Travelers' Ins. Co., 223 Ala. 558, 137 So. 409, to support his contention that the case was properly submitted to the jury. That case can be distinguished from the case at bar by the fact that the question of plaintiff's being injured as the result of an open and obvious danger was not raised in that case.

As I understand the majority opinion, it is rested on the theory that the Foster and Creighton Company, while perhaps not obligated in the first instance to cover or guard the opening through which Robinson fell, it undertook to do so, and because of its negligent failure in that regard Robinson fell to his death. But assuming that the Foster and Creighton Company did assume the duty and did negligently fail to perform it, does it necessarily follow that a jury case was made against Foster and Creighton? Is it not necessary to show that said negligence was the proximate cause of the injury? To make the Foster and Creighton Company liable, its undertaking to cover or guard the opening through which Robinson fell and its negligent failure to do so, must have cloaked the defect, dulled Robinson's call to vigilance, given him a false assurance, and aggravated the danger to him. This, we cannot visualize for the simple reason that the opening was still obviously open and unguarded, and Robinson, of all people, whose sole duty it was to work in and around the series of openings in the third floor, including the opening through which he fell, by the exercise of ordinary care could and should have observed the opening through which he fell, and his failure to do so was, in my opinion, the sole proximate cause of his death. There is nothing in this record to indicate in the slightest degree that Robinson was not aware at all times of the unguarded condition of the opening through which he fell. He cannot be heard to say that he did not know that it was there; nor can he be heard to say that he did not know that it was unguarded. What then, other than his own lack of due care, could have caused his fall? Whose fault, but his own, can it be said caused his injury and death? If that be so, his own negligence was the sole proximate cause of his fall.

For the above reasons, I am of the opinion that the defendant was entitled to the general charge, and I therefore respectfully dissent.